



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 10, 2023**

**United States Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| NGV GLOBAL GROUP, INC., *et al.*,[1] | § | Case No. 22-42780-MXM-11 |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## FINAL ORDER GRANTING DEBTORS' EMERGENCY MOTION
## FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING
## THE USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

On this day the Court considered the *Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection* [Docket Nos. 5 and 6] (the "Motion")[2] filed by NGV Global Group, Inc. ("NGV Global"), Natural Gas Vehicles Texas, Inc. ("NGV Texas"), Natural Gas Supply, LLC ("NGS"), and Natural Gas Logistics

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: NGV Global Group, Inc. (9723), Natural Gas Vehicles Texas, Inc. (8676), Natural Gas Supply, LLC (4584) and Natural Gas Logistics Inc. (5403).

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Motion.

1

Inc. ("NGL", and collectively with NGV Global, NGV Texas, and NGS, the "Debtors"), as debtors and debtors in possession.  Having reviewed the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and based upon the record, the representations of counsel, and the evidence presented during the hearings on the Motion, the Court hereby finds:

      A.      On November 17, 2022 (the "Petition Dates"), the Debtors filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code (the "Code") in this Court.  The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Code.

      B.      This Court has jurisdiction over this case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

      C.      Debtors are obligated to FirstCapital Bank of Texas ("Lender") on multiple loans as described generally in the Motion ("FCB Indebtedness"), which notes are secured by various assets of the Debtors ("Lender's Prepetition Collateral"), including as applicable, the Debtors' cash and cash equivalents ("Cash Collateral").[3]

      D.      An immediate and critical need exists for the Debtors to use funds in order to continue the operation of their businesses.  Without such funds, the Debtors will not be able to fund payroll, pay fuel card obligations, pay other operating expenses, and obtain goods and services needed to carry on their businesses during this sensitive period in a manner that will avoid irreparable harm to the Debtors' estates. The Debtors' ability to use Cash Collateral is vital to their businesses and to the confidence of the Debtors' workforce and vendors, and to the preservation and maintenance of the going concern value of the Debtors' estates. The Debtors

---

[3] Lender and Debtors represent they are working on assembly of applicable loan documents and collateral lists at this early stage of the bankruptcy and, accordingly, the recitation of loans and collateral in the Motion is subject to update as the case develops.

will suffer irreparable and immediate harm if they are not granted the relief herein.

E.      The Court conducted hearings on the Motion on November 22, 2022, December 16, 2022, and January 10, 2023.  On November 22, 2022, the Court granted the Motion on an interim basis pursuant to its *Order Granting Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection* [Docket No. 27] (the "First Interim Order").  Pursuant to the First Interim Order, the Debtors were authorized to use Cash Collateral through December 16, 2022, in accordance with the terms of the First Interim Order.  On December 16, 2022, the Court again granted the Motion on an interim basis pursuant to its *Second Order Granting Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection* [Docket No. 75] (the "Second Interim Order").  Pursuant to the Second Interim Order, the Debtors were authorized to use Cash Collateral through January 13, 2023, in accordance with the terms of the Second Interim Order.

F.      Good cause has been shown for the entry of this Order.  The Court finds that the notices of the Motion and the Hearings on the Motion were sufficient under the circumstances. Entry of this Order is justified and appropriate under the circumstances and is in the best interests of the Debtors, their creditors, and the Debtors' estates.

IT IS THEREFORE ORDERED AND ADJUDGED as follows:

1.      **Final Order.**  This Order is a final cash collateral order, and shall be binding upon all parties and upon all subsequently appointed court officers, including any subsequently appointed trustee, to the extent allowable under the Bankruptcy Code and Bankruptcy Rules.

2.      **Use of Cash Collateral**.  Subject to the terms of this Order, the Debtors are hereby authorized on a final basis to use Cash Collateral for the remainder of the week ending January 13, 2023, and during the period beginning on January 14, 2023 and ending on February 10, 2023, or in any subsequent budget period as provided herein (each, a "Budget Period"), only in the amounts and for the expenses set forth in the Budget attached hereto as **Exhibit "A"**, or in any

subsequent Budget as provided herein (each, a "Budget"), subject to the Budget Variance (as defined below).  The Debtors shall not use Cash Collateral in an amount that exceeds (a) "Total Operating Costs" by more than ten percent (10%) determined on a total disbursements cumulative basis for the Budget Period, or (b) the budgeted amount for each line-item expense by more than fifteen percent (15%) determined on a cumulative basis for the Budget Period (the "Budget Variance"). For the avoidance of doubt, to the extent the Court authorizes the Debtors to honor prepetition obligations, such as payroll or critical vendor payments, such amounts will not be counted towards the maximum allowance for expenses in the Budget.

3. **Subsequent Budgets.**  At least ten (10) days prior to the end of each Budget Period, the Debtors shall submit to Lender's counsel a proposed subsequent budget detailing the proposed continued use of Cash Collateral to pay operating expenses.  The Lender shall have a period of five (5) days thereafter to object to any such proposed subsequent budget in writing to the Debtors.  Any unresolved objections shall be addressed by the Court upon motion by the Debtors or the Lender.  If no objection is timely made, the proposed subsequent budget shall become the new Budget, the proposed term of the Budget shall become the new Budget Period, and the new Budget shall be subject to the terms of this Order.

4. **Replacement Liens**.  Except as otherwise provided herein, as adequate protection to Lender for the Debtors' use of Cash Collateral as permitted herein, to the extent that the Debtors' use of Cash Collateral results in a diminution in value of the Lender's interest the Lender's Prepetition Collateral as of the Petition Date (to the extent such interest is valid and not avoidable), the Lender is granted a replacement lien ("Replacement Lien") in the Debtors' assets that serve as collateral under the Lender's applicable loan documents, in the same order of priority that existed as of the Petition Date.

5. **Adequate Protection – Superpriority Administrative Claim.**  As additional partial adequate protection for the Debtors' use of Cash Collateral, to the extent of any diminution in value and a failure of the other adequate protection provided by this Order, the Lender shall

have an allowed superpriority administrative expense claim in these cases and any successor case or cases as provided in and to the fullest extent allowed by Sections 503(b) and 507(b) of the Bankruptcy Code (the "Superpriority Claim").

6. **Adequate Protection – Insurance Proceeds.** As additional partial adequate protection for the Debtors' use of Cash Collateral, Lender shall be entitled to receive insurance proceeds in the approximate amount of $64,000 for fire damage to a 2016 Freightliner Cascadia tractor which was included in Lender's Prepetition Collateral, and Lender shall apply such insurance proceeds to the FCB Prepetition Indebtedness associated with the Third FCB Note.

7. **Ad Valorem Tax Liens.** Notwithstanding any other provisions of this Order, any statutory liens held by Dallas County or any other ad valorem tax authority (the "Taxing Authorities") for prepetition and postpetition taxes (collectively, the "Tax Liens") shall not be primed or subordinated to the Replacement Liens or any other liens granted to any party hereby to the extent such Tax Liens are valid, senior, perfected, and unavoidable. All parties' rights to object to the priority, validity, amount, and extent of the claims and Tax Liens asserted by the Taxing Authorities are fully preserved.

8. **No Lien Upon Avoidance Actions**. Notwithstanding anything herein to the contrary, the Replacement Lien does not extend to the Debtors' transfer or lien avoidance rights and claims under Sections 544, 545, 547, 548, 549 or 550 of the Bankruptcy Code.

9. **Carve-Out**. Notwithstanding anything herein to the contrary, the Replacement Lien and Superpriority Claim are subject and subordinate to a carve-out of funds (the "Carve Out") for: (a) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to Section 1930(a) of Title 28, United States Code, and (b) all fees and expenses of Debtors' professionals to the extent provided in the Budget and allowed by Order of the Bankruptcy Court.

10. **Perfection of Liens**. The Replacement Liens are, and shall be, valid, perfected, enforceable and effective as of the Petition Date without the need for any further action by the Debtors or the Lender, or the necessity of execution or filing of any instruments or agreements.

11. **Survival**. The terms and provisions of this Order inure to the benefit of, and are binding upon, the Debtors, the Lender, and creditors of the Debtors, and their respective successors and assigns, including, without limitation, any trustee or legal representative of the Debtors appointed in this case or in any superseding case under Chapter 7 of the Code. This Order is immediately valid and fully effective upon entry by this Court.

12. **No Waiver.** Nothing in this Order shall prejudice or waive the right of the Debtors or any other party to contest the amount, validity, or avoidability of the Lender's claims and security interests.

13. **Sale of NGS Collateral.** The Debtors agree to use their best efforts to seek Court approval to sell, on or before March 31, 2023, approximately 328 120-gallon LNG tanks owned by NGS that serve as collateral for NGS's obligations to Lender, and to pay the net proceeds of such sale (after payment of *ad valorem* taxes and costs of sale) to Lender towards satisfaction of such obligations.

14. **Reporting.** During the Budget Period, the Debtors shall continue to comply with all reporting requirements pursuant to the FCB Notes and applicable loan documents.

15. **Inspection of Collateral.** FCB shall be permitted, upon reasonable prior notice to Debtors, to periodically inspect FCB's collateral in accordance with applicable loan documents.

16. **Termination.** The Debtors' authority to use Cash Collateral shall terminate on March 31, 2023, unless extended by agreement or further Order of the Court.

17. This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

### END OF ORDER ###

L:\JPROSTOK\Natural Gas Logistics, Inc. (NGV Global) #6321 WO\Pleadings\Final Order granting Use of Cash Collateral 1.6.23.docx

6

# EXHIBIT A

| COMBINED | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|
| Week Ending | 1/13/2023 | 1/20/2023 | 1/27/2023 | 2/3/2023 | 2/10/2023 |
| A/R Collections | 886,500 | 211,000 | 116,000 | 177,500 | 801,000 |
| Other collections | 25,500 | 7,500 | - | - | 33,000 |
| Total Receipts | 912,000 | 218,500 | 116,000 | 177,500 | 834,000 |
| | | | | | |
| Operating Costs | | | | | |
| Payroll | 283,072 | 146,636 | 278,072 | 146,636 | 283,072 |
| Fuel, tolls and road costs | 60,500 | 54,000 | 54,068 | 47,632 | 48,500 |
| Insurance | 34,992 | 222,721 | 2,787 | - | - |
| Occupancy | 5,850 | - | - | 50,117 | 750 |
| Parts, repairs and supplies | 52,000 | 52,000 | 56,432 | 58,368 | 62,000 |
| Taxes and licenses | 8,213 | 4,106 | 4,106 | 4,106 | 8,213 |
| CAPEX | - | - | - | - | - |
| Other | 9,640 | 9,640 | 9,640 | 9,640 | 9,640 |
| Mike Albert, Ltd. | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| Intercompany Transfers | | | | | |
| Total Operating Costs | 479,266 | 514,103 | 430,105 | 341,499 | 437,174 |
| | | | | | |
| Total BK and Other costs | | | | | |
| Professional Fees | - | - | - | 50,000 | - |
| UST fees | - | - | 12,621 | - | - |
| | 0 | 0 | 12,621 | 50000 | 0 |
| Affiliate contributions | - | - | 280,000 | 75,000 | - |
| Weekly Cash flow | 432,734 | (295,603) | (46,726) | (138,999) | 396,826 |
| | | | | | |
| Rolling Cash Balance | | | | | |
| Beginning Cash | 61,751 | 494,485 | 198,882 | 152,156 | 13,157 |
| Weekly Cash Flow | 432,734 | (295,603) | (46,726) | (138,999) | 396,826 |
| Week Ending Cash Balance | 494,485 | 198,882 | 152,156 | 13,157 | 409,983 |