IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN RE: | Case No. 22-42780-MXM11 |
| NGV GLOBAL GROUP, INC., ET AL., | Chapter 11 |
| Debtors | (Jointly Administered) |

**MOTION OF MIKE ALBERT LTD. FOR
AN ORDER SEQUESTERING VEHICLES**

Mike Albert Ltd. ("MAL") files this Motion (the "Motion") for an Order sequestering all of the vehicles (the "Vehicles") that are subject to the leases between MAL, as Lessor, and one or more of the Debtors and this Court's Agreed Order that was entered on December 27, 2022 [Doc. 90] ("Agreed Order"). The Debtors have failed to provide proof that the Vehicles are insured as required by the Agreed Order. MAL gave notice of breach of that Agreed Order to Debtor's counsel pursuant to that Agreed Order. The Debtors have failed to cure the specific breaches of the Agreed Order by the deadline required by that Order, and in fact, have still failed to cure material breaches of the Agreed Order.

On January 10, 2023 counsel for MAL filed a Certificate of Breach of Agreed Order and Notice of Termination of the Automatic Stay. [Doc. 102]. Pursuant to paragraph 9 of the Agreed Order, upon the filing of that certificate, the automatic stay is deemed vacated without further order of the Court. Nonetheless, the Debtors continue to use the vehicles that are subject to the Agreed Order (the "Vehicles") despite the fact that those Vehicles are not properly insured as required by the Agreed Order. MAL brings this motion for an order directing the Debtors to cease operating

the Vehicles and sequestering the Vehicles to prevent further prejudice to MAL's interests. In support of this motion, MAL respectfully submits as follows:

## BACKGROUND

1. MAL is the lessor under three separate master leases with Debtors Natural Gas Supply, Inc. ("NG Supply"), Natural Gas Logistics, Inc. ("NG Logistics') and Fury Zaidi ("Zaidi"), as follows:

| Lease Date | Lease Number | Lessees |
| --- | --- | --- |
| March 18, 2019 | 200882 | NG Supply<br>NG Logistics, by assignment<br>Zaidi |
| November 1, 2019 | 201260 | NG Supply<br>NG Logistics, by assignment<br>Zaidi |
| March 3, 2020 | 201524 | NG Logistics<br>Zaidi |

2. Each of the above referenced leases ("Leases") require the Lessees to provide, at Lessee's cost and expense, the following insurance coverage:

    A. Primary comprehensive general liability insurance that complies with applicable law, that does not include any self-insured retention or deductible in excess of $3,000 and protects MAL against any and all liability, with minimum limits equal to the greater of (1) the minimum limits required by law; and (2) $500,000 per person per occurrence with respect to bodily injury, $500,000 for all persons per occurrence with respect to bodily injury and $100,000 for damage to property per occurrence.

    B. Physical damage insurance on each Vehicle which complies with applicable law with deductibles and amounts satisfactory to MAL, covering loss from fire, theft, windstorm, and other comprehensive casualties.

3. The Leases also require each Lessee to provide evidence of such insurance coverage, which evidence of insurance must name MAL as an additional insured and loss payee. Copies of the insurance provisions from each of the Leases are attached as Exhibit A to the

Declaration of Keith Miller in Support of Mike Albert Ltd.'s Motion for an Order Sequestering Vehicles, filed herewith ("Miller Declaration").

4. As the Court is aware, MAL filed a motion for relief from the automatic stay on November 22, 2022, to regain possession of the Vehicles. On December 27, 2022, the Court entered the Agreed Order that resolved some of the disputes between MAL and the Debtors and conditioned the continuing application of the automatic stay to certain of the Vehicles pursuant to the terms of that Agreed Order.

5. MAL's concern about whether the Debtors had proper insurance coverage on the Vehicles was one of MAL's foremost concerns even prior to the Debtors' seeking bankruptcy protection. In the November 22 hearing on Debtors' Motion to use cash collateral, MAL learned for the first time via testimony provided by Mr. Zaidi that the Debtors have separate insurance policies, providing different coverage, for Vehicles that are "operating" and Vehicles that are "non-operating". MAL immediately asked for copies of these policies to ensure that the Debtors' insurance provided the coverage required by the Leases. Debtors provided copies of two policies, one issued by Evanston Insurance Company, and one issued by The North River Insurance Company. Copies of those policies are attached as Exhibits B and C to the Miller Declaration.

6. On December 16, MAL advised counsel for NGV by email (a copy of which is attached to the Miller Declaration as Exhibit D) that the Evanston and North River policies did not comply with the requirements in the Leases, for the reasons specified in that email. MAL received no response to these deficiencies. Consequently, when negotiating the terms of the Agreed Order MAL required that the insurance deficiencies be cured immediately as a condition to agreeing to the Agreed Order. Paragraph 4 of the Agreed Order thus provides: "Debtors shall keep all Leased

3

Vehicles insured <u>pursuant to the terms provided in the Leases</u> and shall provide proof of such insurance to MAL <u>no later than close of business on December 23, 2022</u>". (emphasis supplied)

7. Despite the clear provisions contained in the Agreed Order, the Debtors provided <u>no proof of this insurance</u> to MAL by December 23, 2022. By December 27, 2022, MAL still had not received proof that the Vehicles were insured pursuant to the requirements in the Agreed Order, and provided notice of breach of the Agreed Order to counsel for the Debtors. A copy of that email is attached as Exhibit E to the Miller Declaration. In response, counsel for the Debtors forwarded an email that acknowledged that the Debtors had not provided the required proof of insurance, and that they would have confirmation of insurance "in a day or so". A copy of that email is attached as Exhibit F to the Miller Declaration.

8. In order to make sure that there was no misunderstanding about the proof of insurance that MAL required, counsel for MAL outlined five specific insurance deficiencies that were apparent from the copies of the policies that the Debtors had provided to MAL in an email dated December 7, 2022. A copy of that email ("December 28 Email") is attached to the Miller Declaration as Exhibit G.

9. Under the Agreed Order, the Debtors had until January 5, 2023 to cure the breaches of the Order that were identified in MAL's notice of breach. On January 4, 2023, counsel for the Debtors forwarded two emails to counsel for MAL, which apparently were intended to provide information that would cure the default identified in the December 27 notice of breach. Copies of those emails are attached to the Miller Declaration as Exhibits H and I. As is more specifically discussed below, the information provided fell well short of curing the Debtors' breach of the Agreed Order. On January 5, 2023, counsel for MAL advised counsel for the Debtors that the information provided did not satisfy the specific deficiencies in the insurance on the Vehicles,

4

specifically demanded that the Debtors provide a copy of the policy issued by Hartford Insurance Company, which the Debtors had not provided with the other policies, and reserved MAL's rights to act upon the continuing breach in its discretion. Debtors did not respond to that email. A copy of that email is attached to the Miller Declaration as Exhibit J.

10. On January 9, 2023, MAL became aware of the existence of another breach of the Agreed Order by the Debtors. Paragraph 6 of the Agreed Order specifically requires the Debtors to pay on a timely basis all post-petition tolls incurred during the operation of the Vehicles. It further provides that the Debtors must provide proof to MAL that the tolls were paid prior to their being due, to allow MAL to ensure that the tolls were paid before additional penalties and fees were incurred. Despite these express provisions, and despite the fact that MAL had forwarded invoices for post-petition tolls to the Debtor, the Debtors failed to pay a number of tolls.

11. Because of the Debtors' apparent utter disregard for the terms and conditions clearly spelled out in the Agreed Order, MAL decided that it must take action. On January 10, 2023, counsel for MAL filed a certificate of breach of the Agreed Order and notice of termination of the automatic stay [Doc. 102] ("COD"), all in strict compliance with the terms of the Agreed Order. By email dated January 10, MAL provided notice of the COD to Debtor's counsel and demanded that in light of the failure of the Debtors to provide proof of insurance of the Vehicles, all Vehicles must be returned to the Spangler Road property. A copy of that email is attached to the Miller Declaration as Exhibit K. Counsel for the Debtors responded by claiming that the Debtors have not breached the Agreed Order and they do not intend to stop operating the Vehicles.

12. It was not until January 12, 2023, that counsel for NGV finally provided MAL a copy of the Hartford policy. But neither NGV nor its counsel disclosed to MAL that Hartford had served a notice of cancellation of that policy prior to the commencement of the bankruptcy case.

5

This despite numerous representations by NGV and its counsel that all of MAL's Vehicles were insured pursuant to the Agreed Order. A copy of the Hartford Policy is attached to the Miller Declaration as Exhibit L.

13. Despite clear requirements included in the Agreed Order for proving that MAL's Vehicles are properly insured, and specific deadlines for providing that proof, NGV has failed to provide that proof, and continues to operate MAL's vehicles without proper insurance. Indeed, unless and until the Court grants Debtors' motion to pay Hartford's prepetition premiums the Debtors have no liability insurance under the Hartford policy. MAL thus brings this motion for an order requiring the Debtor to cease operating MAL's Vehicles to minimize the ongoing risk to MAL's Vehicles.

## **BREACHES OF THE AGREED ORDER**

14. As mentioned above, the Agreed Order specifically required NGV to provide proof that the Vehicles were insured pursuant to the terms of the Leases by the close of business on December 23, 2022. The Debtors provided nothing to MAL by that date and after MAL gave notice of that default counsel for MAL spelled out in the December 28 Email five specific deficiencies in the insurance coverage on the Vehicles. Those deficiencies are set forth below.

1. Named Insured

15. The named insured on the Evanston and North River policies is "NGV Global, Inc.". There is no reference in either of those policies that subsidiaries of NGV Global are covered insureds. The lessees under the MAL Leases that have the right to operate the Vehicles are NG Supply and NG Logistics. Neither are insured on the face of the Evanston or North River policies.

16. The certificate of insurance that NGV provided to MAL on January 4, 2023 apparently was provided with the intent to cure this deficiency. It does not. The certificate has

6

attached to it a page that is entitled "Named Insured List". Whatever a "Named Insured List" is, it is <u>not</u> a policy endorsement, which is the document that is required to prove that additional parties have been added to the policy as named insureds. This breach of the Agreed Order was not cured by January 5, and remains uncured.

2. <u>Additional Insured</u>

17. The Leases required that MAL be named as an additional insured and as a loss payee on the policies covering the Vehicles. This deficiency was specifically identified in the December 27 email. None of the documents provided by the Debtors has cured this breach.

18. The North River policy has no additional insured or loss payee endorsement to protect MAL. This breach remains uncured.

19. The Evanston policy contains broad loss payee language, which reads: "we will pay any and all loss payees <u>according to written contract</u> as their interest may appear." (emphasis provided). This does not satisfy the terms of the Leases, or the Agreed Order. As stated below, the named insured on the Evanston and North River policies is NGV Global Group, Inc. NGV Global Group, Inc. is not a lessee under the Leases and has no interest in the Vehicles. The blanket loss payee endorsement in the Evanston policy does not provide protection to MAL because the insured under that policy—NGV Global Group, Inc.—is not MAL's lessee. MAL does not have a contract with NGV Global for the provision of insurance. The entities that MAL does have a contract with, i.e. NG Supply and NG Logistics, are not named insureds under the policy.

20. The certificate of insurance that counsel for NGV provided in his January 4 email apparently was intended to cure the policies' failures to provide additional insured and loss payee protection to MAL. It does not. The certificate provided did include an additional insured and loss payee endorsement but that endorsement only applies to the Debtors' insurance policy issued

7

by Hartford Insurance Company. It does not relate to either the Evanston or North River policies. The Debtors did not cure this identified breach by January 5, and that breach remains uncured.

3. <u>Eight Vehicles are not listed on the Evanston Policy or the North River Policy.</u>

21. The Debtors have advised MAL that Vehicles that are "operating" are covered under the Evanston policy, and Vehicles that are "idle" are covered under the North River policy. Covered Vehicles are listed on schedules attached to those policies. The Debtors can change which policy covers a Vehicle, or remove a Vehicle from coverage, by notifying the insurance company of the change.

22. In the December 28 email, counsel for MAL provided a list of eight Vehicles that were not listed as insured Vehicles under <u>either</u> of the Evanston policy or the North River policy. As a result, these Vehicles do not appear to be insured.

23. Mr. Prostok's January 4 email actually acknowledged that two of these Vehicles are "not found" and four of them are "excluded". Thus, the Debtors essentially admitted these six vehicles are not covered by the Evanston or the North River policies. In addition, Mr. Prostok's January 4 email shows that one of the eight Vehicles are listed as "idle" and one of them is "active/operating", but it did not provide any proof that they are listed as insured Vehicles on the policies. This specific identified deficiency is still not cured as of today's date.

4. <u>Twenty-five Vehicles are listed as "non-operating" Vehicles but are in fact being operated.</u>

24. The insurance provisions of the Leases do not provide for a reduced insurance coverage for Vehicles that the Debtors determine are "idle". Nonetheless, setting aside that the "dual insurance" provided by the Evanston and North River policies itself is in violation of the Agreed Order, the December 27 email identified twenty-five Vehicles that were listed by the Debtor as being covered by the North River policy as "non-operating" Vehicles were, in fact, being

8

operated by the Debtors. If this is correct, then these Vehicles obviously are not properly insured. In his January 4 email, Mr. Prostok acknowledges that nine of the twenty-five Vehicles identified by MAL as being listed as "non-operating" Vehicles are in fact being operated, and providing no proof that they were listed as operating Vehicles on the Evanston Policy, thus <u>confirming</u> the Debtors' breach of the Agreed Order. This breach has not been cured as of today's date.

5. <u>The Debtors do not have insurance on fifteen Vehicles that are subleased to third parties.</u>

25. In late 2022, MAL became aware that the Debtors have entered into subleases of at least fifteen of the Vehicles with third parties. The Leases do not permit subleasing to third parties. Section D.2 of the Physical Damage Coverage Form that is part of the Evanston policy specifically states that: "The coverage provided in COVERED CAUSES OF LOSS will not apply when the covered vehicle is under lease or interchange agreement to another party." This deficiency was identified in the December 27 Email as a breach of the Agreed Order.

26. Mr. Prostok's January 4 email does not dispute MAL's allegation that fifteen of the Vehicles are subleased to third parties, or that the Debtors' insurance policies do not cover loss for damage while the Vehicle is under lease to those third parties. The email simply responded that sublessees are required to provide insurance, but the email did not even attempt to provide proof that such insurance was in fact in place. This breach of the Agreed Order remains uncured.

27. In addition, Mr. Prostok's January 4 email suggested that two of the Vehicles in the "subleased" category are "excluded" and thus not covered at all under the Debtor's policies even if they were not subleased. This breach also remains uncured.

28. On January 12 (a week after the deadline for providing proof of insurance) counsel for the Debtors provided copies of a collection of certificates of insurance issued to third parties. Counsel expressly stated in her email that she could not represent that the certificates provided relate to MAL's Vehicles. However, even if they do, not one of the certificates provide insurance

9

coverage required "pursuant to the terms of the Leases". Some of them are expired. Not one of them identifies MAL as an additional insured or as a loss payee. None of them even reflects that any interest in the Vehicles they may have as a sublessee derives from either NG Supply or NG Logistics, MAL's lessees. The only Debtors identified in any of the certificates of insurance is NGV Global. However, as discussed above, NGV Global is not a lessee under the MAL Leases and has no interest in the MAL Vehicles. The policies reflected in the certificates provided with respect to the subleased Vehicles are worthless to protect MAL.

## LEGAL ARGUMENT

29. Upon the commencement of a bankruptcy case, the Bankruptcy Court has exclusive jurisdiction of all of the debtor's property, wherever located, and property of the estate. 28 U.S.C. §1334(b); 28 U.S.C. §157(a). This Court also has inherent authority to enforce its own orders. 2 Collier on Bankruptcy ¶105.02. Section 105(a) of the Bankruptcy Code grants to the Court the authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of" title 11, or to take "any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

30. Courts have resorted to these powers to resolve issues regarding the ability to detect and punish contempt, to administer the assets under its control and the claims related to them, and to monitor and supervise bankruptcy estates. 2 Collier on Bankruptcy ¶105.02. *See, e.g. In re Maddox*, 84 B.R. 251 (Bankr. N.D. Ga. 1987)(bankruptcy court has authority to marshal assets); *Rigby v. Mastro (In re Mastro),* 585 B.R. 587, 596 (B.A.P. 9th Cir. 2018) (upholding bankruptcy court order directing debtor to sign a consent directive enabling and facilitating trustee's attempt to find assets).

31. Here, the terms of the Agreed Order, which the Debtors agreed to before it was submitted to the Court, clearly provide that "Debtors shall keep all Leased Vehicles insured pursuant to the terms provided in the Leases and shall provide proof of such insurance to MAL no later than close of business on December 23, 2022." Agreed Order at ¶4. The Debtors failed to comply with the Court's clear directive in that Order. Their continued failure to comply with the Agreed Order places MAL's interest in the Vehicles at material risk because MAL's Vehicles are being operated without insurance that protects MAL's interest. MAL asks that the Court sequester those Vehicles to minimize the risk caused by the Debtor's continued violation of the Agreed Order.

## CONCLUSION

32. Despite MAL's specific identification of deficiencies in the insurance on the Vehicles, the Debtors continue to operate the Vehicles without the insurance agreed upon by the parties and mandated by the Agreed Order. This obviously puts MAL's interest in the Vehicles at material risk and must not be countenance by the Court. The provisions in the Agreed Order that required immediate proof that the vehicles were insured was a material condition included in the Agreed Order. The Debtors' continued breach of the order, failure to cure, and continued operation of Vehicles that are not properly insured as required by that Agreed Order, is grounds for this Court to order the Debtors to cease operating all the Vehicles, regain possession of the subleased Vehicles, and return all Vehicles to the Spangler Road property pending MAL's recovery of those Vehicles.

Dated: January 18, 2023                                  Respectfully submitted,

   */s/ Patrick Lynch*
Patrick Lynch
QUILLING SELANDER LOWNDS,
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 880-1864
Plynch@QSLWM.com

Robert G. Sanker
KEATING MUETHING & KLEKAMP PLL
One East 4th Street, Suite 1400
Cincinnati, Ohio 45202
(513) 579-6400
Rsanker@kmklaw.com

*Attorneys for Mike Albert Ltd.*

**CERTIFICATE OF SERVICE**

A true and correct copy of the Motion of Mike Albert for an Order Sequestering Vehicles was served upon the parties listed below by First Class Mail, postage prepaid, or by electronic filing notification, on January 18, 2023.

U.S. Trustee
1100 Commerce Street, Room 976
Dallas, TX 75202

Emily S. Chou, Esq.
Lynda L. Lankford, Esq.
Jeff P. Prostok, Esq
Dylan Tanner Franklin Ross, Esq.
Forshey Prostok LLP
777 Main Street Suite 1550
Fort Worth, TX 76102

NGV Global Group, Inc.
10733 Spangler Road
Dallas, TX 75222

Attached Service List

                                            /s/ Patrick M. Lynch
                                            Patrick M. Lynch

**CERTIFICATE OF CONFERENCE**

    The undersigned counsel for Mike Albert Ltd. hereby certifies that counsel for Mike Albert Ltd. and counsel for Debtor have conferred on multiple occasions by phone and email regarding the relief requested in the instant motion. Counsel were unable to come to an agreement between the parties and the motion is therefore submitted for Court consideration and action.

                                                   /s/ Patrick M. Lynch
                                               Patrick M. Lynch