

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 21, 2023**

*Mark X. Mullin*
_____
**United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| NGV GLOBAL GROUP, INC., ET AL.,[1] | § | CASE NO. 22-42780-MXM-11 |
| | § | |
| DEBTORS. | § | CHAPTER 11 |
| | § | |

### ORDER DENYING MOTION UNDER SECTION 365(d)(3) TO COMPEL
### DEBTORS TO PAY LEASE OBLIGATIONS FOR 2022 REAL PROPERTY TAXES

*[Relating to ECF. No. 57]*

Before the Court is the Motion[2] filed by NGV Global's three Landlords.[3]  The Landlords seek (i) relief from the § 362 automatic stay to permit the Landlords to (a) exercise their rights under Texas law to evict the Debtors and seek possession of the leased premises, (b) terminate

---

[1] NGV Global Group, Inc. ("***NGV Global***"), Natural Gas Vehicles Texas, Inc. ("***NGV Texas***"), Natural Gas Supply, LLC ("***NGS***"), and Natural Gas Logistics, Inc. ("***NGL***") (collectively, the "***Debtors***").

[2] *Amended Motion for Relief from the Automatic Stay and for Entry of Order Waiving the Provision of FRBP 4001(a)(3), and for Other Relief* (the "***Motion***") [ECF No. 57].

[3] OSI 10801 Spangler Rd, LLC ("***OSI 10801***"), OSI 10737 Spangler Rd, LLC ("***OSI 10737***"), and OSI 2001 Manana Dr, LLC ("***OSI 2001***") (each a "***Landlord***" or collectively, the "***Landlords***").

their respective leases (if the Landlords elect to do so), and (c) market the leased premises for lease or sale to any third party (the "**Lift Stay Dispute**"); and (ii) to compel the Debtors to timely perform their obligations to pay the 2022 real property taxes due under the Leases (defined below) arising from and after the order for relief until such Leases are assumed or rejected as required by 11 U.S.C. § 365(d)(3) (the "***365(d)(3) Dispute***").[4]

At the commencement of the hearing, the Debtors and the Landlords announced an agreed resolution of the Lift Stay Dispute, which will be addressed by a separate order.

This Order will address the 365(d)(3) Dispute. The Court has reviewed and considered the Motion, Debtors' Response,[5] Joint Exhibits[6] admitted into evidence, testimony of Mr. Andrew T. Smith, Debtors' Brief,[7] Landlords' Brief,[8] and the arguments of counsel. This Order constitutes the Court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52, made applicable in this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014. For the reasons explained below, the Court finds and concludes that the Landlords' Motion seeking relief in the 365(d)(3) Dispute is ***DENIED***.

## I.    JURISDICTION

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334 and 157. This contested matter is a core proceeding over which the Court has statutory and constitutional authority to enter final orders and judgments.

---

[4] The Motion did not specifically seek relief under Section 365(d)(3), however, during the hearing and in the post-hearing briefings, the parties raised and argued the Section 365(d)(3) Dispute. Therefore, the Court construes the Motion was modified by agreement to include such requested relief.
[5] *Debtors' Response in Opposition to Amended Motion for Relief from the Automatic Stay filed by Landlords* (the "***Debtors' Response***") [ECF No. 82].
[6] *Joint Witness and Exhibit List in Connection with Hearings Set for January 26, 2023* (the "***Joint Exhibits***") [ECF No. 133].
[7] *Debtors' Supplemental Brief Regarding Section 365(d)(3) Obligations* (the "***Debtors' Brief***") [ECF No. 154].
[8] *Landlords' Response to Debtors' Brief Regarding 11 U.S.C. § 365(d)(3) Obligations* (the "***Landlords' Brief***") [ECF No. 157].

## II. FACTS

On May 16, 2022, approximately six months prior to the Debtors filing of their respective bankruptcy cases, NGV Global entered into the following lease agreements (each a "*Lease*" or together, the "*Leases*") with the corresponding Landlord:

    i.    *Lease Agreement* between lessee NGV Global and lessor OSI 10801[9]

    ii.    *Lease Agreement* between lessee NGV Global and lessor OSI 10737[10]

    iii.    *Lease Agreement* between lessee NGV Global and lessor OSI 2001[11]

Section 4 in each Lease is labeled: *Rent; Additional Rent*. Under Section 4, NGV Global is required to pay *Base Rent* (as defined in each Lease) on the first day of each month. Section 4 in each Lease provides further that NGV Global shall pay all *Additional Rent* (defined as "[a]ll amounts which Lessee is required to pay pursuant to this Lease (other than Base Rent)") "with the next monthly installment of Base Rent."[12] Each of the Leases then define *Rent* as "Base Rent and Additional Rent."

Because Section 4 defines Additional Rent as "*all* amounts… other than Base Rent," real property taxes obligations are included as Additional Rent.[13] But, to further delineate the landlords' and tenant's respective obligations regarding real property taxes, the Leases include Section 14 labeled: *Taxes*.[14] Section 14(a) provides that "Lessor shall promptly (and no later than thirty (30) calendar days from Lessor's receipt) provide Lessee with any . . . tax bills for real property taxes." Section 14(a) provides further that "Lessee shall pay for any real property taxes

---

[9] Ex. 1 [ECF No. 133-1].
[10] Ex. 2 [ECF No. 133-2].
[11] Ex. 3 [ECF No. 133-3].
[12] Exs. 1, 2, and 3; ¶ 4.
[13] Exs. 1, 2, and 3; ¶ 4 (emphasis added).
[14] Exs. 1, 2, and 3; ¶ 14.

. . . accruing and imposed on the Property during the Term. Such taxes . . . shall be payable directly to the entity imposing the tax."[15] Thus, under the terms of the Leases, the Landlords are responsible for "promptly providing" the tax bills to NGV Global for any given year to trigger NGV Global's obligation to pay such real property tax bills.

NGV Global failed to timely pay the November 2022 Base Rent due under the Leases. Therefore, on November 4, 2022, each of the Landlords sent NGV Global a *Notice of Demand for Payment* (the "**Demand Letters**").[16] Each of the Demand Letters provided, in pertinent part:

> Pursuant to Section 4 of the Lease, you have an obligation to pay [Landlord] the Rent and Additional Rent (collectively, the "Rent") as outlined in the Lease. Due to your failure to pay the Rent timely, you have incurred an outstanding balance of [$], reference herein as the Full Amount.

The exhibit attached to each of the Demand Letters does not include a dollar amount owing for 2022 real property taxes. The exhibits do, however, include a footnote that states:

> Full amount of Property Taxes payable directly to Taxing Authority. Proof of Payment(s) due to Landlord within (30) days of recipe of this Demand Letter required.

The credible and uncontroverted testimony of Mr. Smith made clear that the Landlords did not intend to include in the Demand Letters a demand for NGV Global to pay the 2022 real property tax bills nor did the Demand Letters constitute the Landlords' required notice under Section 14(a) of the Leases to trigger NGV Global's obligation to pay the 2022 real property tax bills. Mr. Smith testified as follows:

Mr. Stromberg:   Is this [Exhibit 6] where you were giving the tenant notification as required under 14(a) of the taxes on this property?

Mr. Smith:   No, no it was not.

---

[15] Exs. 1, 2, and 3; ¶ 14 (emphasis added).
[16] Exs. 6, 7, and 8 [ECF Nos. 133-6 thru 133-8].

4

| | | |
|---|---|---|
| Mr. Stromberg: | | You weren't giving them notification? |
| Mr. Smith: | | This demand notice was issued for a lack of payment of Base Rents. |

. . .

| | | |
|---|---|---|
| Mr. Stromberg: | | How do we know that the demand you're making here isn't a demand for ad valorum taxes on November 4? |
| Mr. Smith: | | Because the numbers for those ad valorum taxes are not outlined in either this letter in this notice or in the exhibit that we provided.[17] |

In further support of his testimony, Mr. Smith then noted that the dollar figures included in paragraph two of each Demand Letter ($165,116.49, $209,068.32, $86,717.19)[18] were also referenced in the exhibits attached to the Demand Letters. Yet again, the referenced dollar figures do not include any amounts for 2022 real property taxes.

On November 17, 2022 (the "**Petition Date**"), the Debtors filed their respective bankruptcy cases.

On December 6, 2022, NGV Global paid Landlords OSI 10737 and OSI 2001 the December 2022 Base Rent that was due under their respective Leases.[19] On the same day, the Landlords filed this Motion.

### III.    ANALYSIS

The Landlords contend that NGV Global has an obligation to perform all post-petition obligations accruing under the Leases, including the obligation to pay the 2022 real property tax

---

[17] 3:29:23 thru 3:30:11. Contrary to Mr. Smith's clear and uncontroverted testimony, the Landlords contend in the Landlords' Brief that the Demand Letters did constitute the requisite notice required in Section 14(a) of the Leases. The Court disagrees.
[18] Exs. 6, 7, and 8.
[19] Ex. 4, ¶ 8 and 9.

bills.[20] The Landlords contend further that the "obligation" for NGV Global to pay the real property tax bills arose post-petition. Consequently, the Landlords argue that Section 365(d)(3) *requires* NGV Global to immediately pay its share of the 2022 real property tax bills directly to the entity that imposed the tax.

NGV Global, on the other hand, contends that either (i) NGV Global's obligation to pay the 2022 real property tax bills arose prior to the Petition Date through the Demand Letters, or (ii) a substantial portion of the 2022 real property taxes "accrued" prior to the Petition Date and that Section 365(d)(3) only requires NGV Global to pay that portion of the 2022 real property taxes that "accrued" after the Petition Date.

In short, the parties disagree over the correct interpretation of Section 365(d)(3) and how it effects NGV Global's Lease obligations to pay the 2022 real property taxes—some of which "accrued" prior to the Petition Date and some of which "accrued" after the Petition Date. Courts across the country also disagree on the correct interpretation and application of Section 365(d)(3). Although the Fifth Circuit Court of Appeals has not addressed the interpretation and application of Section 365(d)(3), another bankruptcy judge in the Northern District of Texas has performed a detailed analysis of the interpretation and application of Section 365(d)(3):[21]

> §365(d)(3) is not ambiguous and requires that a debtor timely perform all obligations that arise (in an absolute, non-accrual sense) under an unexpired nonresidential real property lease between two points in time – i.e., after the order for relief and until the lease is assumed or rejected by the debtor. If Congress had intended to continue the proration practice under the former Bankruptcy Act when it adopted *§ 365(d)(3)*, it could have provided for that result easily by choosing to enact legislation that required the trustee to

---

[20] Because NGV Global and the Landlords entered into the Leases on May 16, 2022, the Landlords concede that, to the extent NGV Global is obligated under the Leases for 2022 property taxes, such obligation is pro-rated to include only May 16, 2022 through December 31, 2022. *See* Landlords' Brief pg. 2, f/n 1.
[21] *In re FFP Operating Partners, L.P.*, 2004 Bankr. LEXIS 884 (Bankr. N.D. Tex. June 16, 2004).

6

> timely perform all the obligations of the debtor . . . *accruing* from and after the order for relief . . . until such lease is assumed or rejected.[22]

The *FFP Operating Partners* court noted further:

> Regarding 2003 real estate taxes, the Leases require the Lessors to bill the Debtor for those taxes and to submit copies of the underlying tax bills (as received from the taxing authorities) to the Debtor in order to trigger the Debtor's obligation to pay the taxes. Once billed, the Debtor is obligated to pay the taxes.
>
> . . .
>
> [B]ecause the Debtor's obligation to pay 2003 taxes has not been triggered in accordance with the express terms of the Leases, § 365(d)(3) is not yet applicable to require the Debtor to pay 2003 taxes on the leased premises.[23]

Here, although the Landlords suggest in Landlords' Brief that they "put on evidence"[24] to establish that the total *ad valorem* taxes billed by the Dallas County Appraisal District for the three properties totaled $166,237.86, there is no evidence in the record to suggest or establish that the Landlords "promptly (and no later than thirty (30) calendar days from [Landlord's] receipt) provide[d] [NGV Global] with [the] . . . tax bills for real property taxes."[25]

As confirmed by Mr. Smith, the Demand Letters did not constitute the Landlords' required notice under Section 14(a) of the Leases to trigger NGV Global's obligation to pay the 2022 real property tax bills nor did the Demand Letters make demand on NGV Global to pay the 2022 real property taxes. Rather, the Demand Letters only made a demand for payment of (i) the November 2022 Base Rent, and (ii) Additional Rent for insurance reimbursement obligations under Section 8(a)(iii) of the Leases.

---

[22] *Id.* at *13-*14 (footnote omitted).
[23] *Id.* at *18-*19.
[24] *See* Landlords' Brief pg. 2, f/n 1; *see also* Exs. 9 thru 12.
[25] Exs. 1, 2, and 3; ¶ 14 (emphasis added).

7

Thus, there is no evidence in the record to suggest or establish that the Landlords "promptly provided" the 2022 real property tax bills to NGV Global to trigger its obligation in the Leases to then pay the 2022 real property tax bills. Consequently, like the *FFP Operating Partners* case, the Landlords failed to satisfy their burden to establish that the obligation of NGV Global to pay the 2022 real property tax bills had ever been triggered, let alone having been triggered "from and after the order for relief."[26]

### IV.    CONCLUSION

For all the foregoing reasons, it is

**ORDERED** that the Landlords' Motion under Section 365(d)(3) seeking to compel the Debtors to immediately pay the 2022 real property tax bills is **DENIED**.

### ### END OF ORDER ###

---

[26] 11 U.S.C. § 365(d)(3).