IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 CASES |
| | ) | |
| NGV GLOBAL GROUP, INC. | ) | CASE NO. 22-42780-MXM-11 |
| | ) | |
| NATURAL GAS VEHICLES TEXAS, INC. | ) | CASE NO. 22-42781-MXM-11 |
| | ) | |
| NATURAL GAS SUPPLY, LLC | ) | CASE NO. 22-42782-MXM-11 |
| | ) | |
| NATURAL GAS LOGISTICS, INC., | ) | CASE NO. 22-42783-MXM-11 |
| | ) | |
| DEBTORS. | ) | |

## MIKE ALBERT LTD.'S MOTION TO HOLD DEBTORS AND FARROUKH ZAIDI IN CONTEMPT

Mike Albert, Ltd. ("MAL"), by and through counsel, hereby moves, pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rules 2020 and 2014, for an order holding the Debtors, and their principal, Farroukh Zaidi, in contempt for their intentional and continuing violation of the Court's January 27, 2023 Agreed Order Granting Mike Albert Ltd. Motion for Order Sequestering Vehicles and Motion for Relief From Stay [Doc. 151] and [Doc. 152] ("Sequester Order"). In the latest example of the Debtors' and Mr. Zaidi's utter disregard for this Court's orders, the Debtors failed to pay MAL $2,775,000 on February 15, 2023, as required by the Sequester Order, and yet continue to use MAL's vehicles, in direct contravention of the express provisions of that Sequester Order. This Motion is brought as a last resort to impose necessary and appropriate sanctions upon the Debtors and their principal, Farroukh Zaidi, to compel their

1

immediate compliance with the Sequester Order, and to compensate MAL for the expense for having to take these steps to compel that compliance.

## INTRODUCTION AND RELEVANT FACTS

1. As the Court will recall from MAL's original Motion for Relief From Stay filed on November 22, 2022 (the "Stay Motion"), the Debtors have not made the required lease payments under the MAL Lease since January of 2022. [Doc. 20]. On December 27, 2022, this Court signed and entered an Agreed Order [Doc. 90] ("December Order") that granted the Stay Motion as to all of the Vehicles subject to the leases between MAL and the Debtor (the "Vehicles") except for 100 Vehicles that the Debtors were permitted to retain (the "Retained Vehicles") <u>subject to the terms and conditions set forth in that December Order</u>.

2. The Debtors immediately and repeatedly failed to comply with the provisions of the December Order. For example, the Debtors failed to provide proof of appropriate insurance by December 23, 2022, despite multiple communications and follow up by MAL. Then, on January 9, 2023, MAL became aware that the Debtors had failed to timely pay post-petition tolls incurred during the operation of the Vehicles. Because of the Debtors' apparent utter disregard for the terms and conditions clearly spelled out in the Agreed Order, MAL decided that it must take action.

3. On January 10, 2023 counsel for MAL filed a Certificate of Breach of Agreed Order and Notice of Termination of the Automatic Stay. [Doc. 102]. Pursuant to paragraph 9 of the Agreed Order, upon the filing of that certificate, the automatic stay was deemed vacated without further order of the Court.

4. Nonetheless, the Debtors continued to use the vehicles that were subject to the Agreed Order (the "Vehicles") despite the fact that those Vehicles were not properly insured. MAL was therefore forced to file a motion for an order directing the Debtors to cease operating

2

the Vehicles and sequestering the Vehicles ("Motion to Sequester") to prevent further prejudice to MAL's interests on January 18, 2023 [Doc. 121].

5. MAL's Motion to Sequester was scheduled for hearing on January 26, 2023. The day before that hearing, the parties reached an agreement, set forth in the Sequester Order, that provided assurance to MAL that 37 of the Retained Vehicles would be purchased by February 15, and the balance would be purchased by February 28, 2023, or the Debtors would return the Vehicles to MAL. Specifically, the Sequester Order ordered, *inter alia*. that:

> (2) By January 31, 2023, Debtors shall provide to MAL (a) written confirmation of a commitment of a third party to purchase or to finance the purchase of 37 of the "Retained Vehicles" (the "37 Vehicles") and (b) contact information so that MAL can speak directly to that third party for confirmation.
>
> (3) By February 15, 2023, Debtors shall pay or cause to be paid to MAL by wire transfer $2,775,000 for the 37 Vehicles.

6. The court further ordered in paragraph 7 that "In the event that: (a) ***Debtors shall fail to make the payments required by paragraphs 3 and 5 of this Order on the dates specifically provided in those paragraphs***, and (b) counsel for MAL files with the Court a certification that such breach has occurred, then without further order of the Court the automatic stay shall be deemed vacated as to all the Retained Vehicles, and ***Debtors shall immediately return all Retained Vehicles*** to a location in the Dallas/Ft. Worth area designated in writing via email to counsel for Debtors." (emphasis added).

7. Debtors failed to provide a written commitment for purchase or refinance by January 31, and even failed to provide the required third party contact information. The Debtors blamed their failure on the winter storm that paralyzed the Dallas/Ft. Worth area. However, when MAL still had not received either the written confirmation or contact information by February 7, MAL had no choice but to serve notice that the Debtors had breached the Sequester Order. More

importantly, however, Debtors failed to pay MAL $2,775,000, as specified in paragraph 3, by February 15, 2023. See Declaration of Brian L. Brown ("Brown Declaration") at ¶ 9.

8. Therefore, on February 16, 2023, pursuant to the terms of the Sequester Order, ¶ 7, MAL filed with the Court a certification that such breach occurred [Doc. 167]. Upon this Certificate being filed, the Sequester Order provides that the automatic stay was deemed vacated, and Debtors were to "<u>immediately return all Retained Vehicles</u> to a location in the Dallas/Ft. Worth area designated in writing via email to counsel for Debtors."

9. Counsel for MAL sent an email to counsel for Debtors on February 16, 2023 demanding return of the Vehicles to designated locations. A true and accurate copy of the email is attached as Exhibit D to the Brown Declaration. However, to date, Debtors have refused to return the Retained Vehicles in clear and blatant violation of the Court's Order to Sequester.

10. MAL has resorted to this Court two prior times seeking intervention to protect its rights in its Vehicles. Both times, MAL has entered into agreed orders that allowed the Debtors an opportunity to continue to use MAL's Vehicles. Both times, the Debtors ignored the terms of those agreed orders. Accordingly, Debtors and their principal, Mr. Zaidi, should be held in contempt for violating this Court's Sequester Order.

## STANDARD OF REVIEW FOR CIVIL CONTEMPT

11. "The power to impose sanctions for contempt of an order is an inherent and well-settled power of all federal courts—including bankruptcy courts." *In re Highland Capital Mgt., L.P.,* Bankr.N.D.Tex. No. 19-34054-sgj11, 2021 Bankr. LEXIS 2074, at *29 (Aug. 3, 2021) (affirmed in part and reversed in part on other grounds by *Charitable DAF Fund LP v. Highland Capital Mgmt. LP,* Civil Action No. 3:21-cv-01974-X, 2022 U.S. Dist. LEXIS 175778 (N.D. Tex. Sep. 28, 2022)); *Schermerhorn v. Centurytel, Inc. (In re Skyport Glob. Communs., Inc.),* Nos. 08-36737-H4-11, 10-03150, 10-03225, 10-03150), 2013 Bankr. LEXIS 3218, at *6 (Bankr. S.D. Tex.

Aug. 7, 2013), aff'd., 661 Fed. Appx. 835 (5th Cir. 2016); *see also In re Bradley*, 588 F.3d 254, 255 (5th Cir. 2009) (noting that "civil contempt remains a creature of inherent power[,]" to "prevent insults, oppression, and experimentation with disobedience of the law[,]" and it is "widely recognized" that contempt power extends to bankruptcy) (quoting 11 U.S.C. § 105(a), which states, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). *Garrett v. Coventry II DDR/Trademark Montgomery Farm, L.P. (In re White-Robinson),* 777 F.3d 792, 795 (5th Cir. 2015) ("A bankruptcy court may issue civil contempt orders.")

12. A bankruptcy court's power to sanction those who "flout [its] authority is both necessary and integral" to the court's performance of its duties." *In re Highland Capital Mgt.,* 2021 Bankr. LEXIS 2074, at \*29 (internal citations omitted); *SkyPort Global*, 2013 Bankr. LEXIS 3218, at \*6. "Indeed, without such power, the court would be a 'mere board[ ] of arbitration, whose judgments and decrees would be only advisory.'" *Id*. (internal quotations omitted).

13. "A party commits contempt when [they] violate[] a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order." *In re Highland Capital Mgt.,* 2021 Bankr. LEXIS 2074, at \*31 (internal quotations omitted). To succeed in this civil contempt motion, MAL must only show by clear and convincing evidence: "(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *Id.*

14. Here, the Debtors violated a "definite and specific order of the court requiring [them] to perform a particular act ... with knowledge of the court's order."

5

15. Specifically, the Sequester Order required that "[b]y February 15, 2023, Debtors shall pay or cause to be paid to MAL by wire transfer $2,775,000 for the 37 Vehicles," and that if Debtors failed to do so "**Debtors shall immediately return all Retained Vehicles** to a location in the Dallas/Ft. Worth area designated in writing via email to counsel for Debtors." Debtors clearly knew of the Order to Sequester, as they agreed to it. The Debtors violated the Order to Sequester by failing to pay MAL $2,775,000 by February 15 and by failing to immediately return the Retained Vehicles upon this default.

16. In finding that Debtors violated the Order to Sequester, the Court can "order what is necessary to: (1) compel or coerce obedience of an order; and (2) to compensate [] for losses resulting from non-compliance with a court order." *In re Highland Capital Mgt.,* 2021 Bankr. LEXIS 2074, at \*37. In addition, "the Fifth Circuit has affirmed sanctions that 'reimburse [the opposing litigant] for its reasonable attorney fees related to the hearing on the motion for contempt. In awarding compensatory civil sanctions, bankruptcy courts do not err in awarding a sanction that 'restores the . . . parties to where they were before they incurred attorneys' fees in an attempt to ensure compliance.'" *Charitable DAF Fund LP v. Highland Capital Mgmt. LP,* Civil Action No. 3:21-cv-01974-X, 2022 U.S. Dist. LEXIS 175778, at \*16 (N.D. Tex. Sep. 28, 2022) (*citing Ravago Ams. L.L.C. v. Vinmar Int'l,* 832 F. App'x 249 (5th Cir. 2020); *accord Skyport Global,* 661 F. App'x at 841 ("Almost without exception it is within the discretion of the trial court to include, as an element of damages assessed against the defendant found guilty of civil contempt, the attorneys' fees incurred in the investigation and prosecution of the contempt proceedings.").

17. The Court may also order that Debtors pay a daily penalty until the Order to Sequester is complied with to "coerce compliance." *See Garrett,* 777 F.3d at 798.

18. Moreover, the U.S. Supreme Court, in *Wilson v. United States*, established the principle that an individual principal of the offending corporation can be held responsible for the corporation's contempt:

> A command to a corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, appraised of the writ directed to the corporation, prevent compliance, or fail to take appropriate action within their power for the performance of the corporate duty they, less than the corporation itself, are guilty of disobedience and may be punished for contempt.

221 U.S. 361, 376, 31 S. Ct. 538, 543 (1911). This "responsible person" rule is well-recognized in the Fifth Circuit. *See Am. Airlines, Inc. v. Allied Pilots Assn.,* 228 F.3d 574, 581 (5th Cir. 2000) (holding officers of union subject to contempt charges for failure to cause union to comply with court order); *see also, In re Continuum Care Services, Inc.*, 375 B.R. 692 (Bankr. S.D. Fla. 2007) (ordering apprehension of former officer of the debtor in contempt of court for failure to comply with Rule 2004 order).

19. The Bankruptcy Court in the E.D. Louisiana was faced with a situation similar to ours in *In re FlyGLO, Inc.,* No. 17-11015, 2018 Bankr. LEXIS 1133 (Bankr. E.D. La. Apr. 12, 2018). In *FlyGLO*, the lessor of airplanes to the debtor filed a motion for relief from stay, which was resolved by an agreed order that allowed the debtor to continue to use the planes and "required FlyGLO to perform certain obligations with respect to the aircraft." *Id.* at *3. The debtor subsequently rejected the lease and ceased operations, but refused to take the necessary steps to cause the aircraft to be returned to the lessor. The lessor sought contempt sanctions against the debtor and the debtor's principal (Mr. Fayard). The Court agreed, and held the principal in contempt, stating:

> [T]he court notes the difference between FlyGLO's inability to fulfill the terms of the consent order due to its failure to successfully reorganize (i.e., to make payments on amounts due to various entities and to fund maintenance and repairs required by the consent agreement), and FlyGLO's (acting through Fayard) failure to act reasonably to prevent [the lessor,] Alandia from incurring unnecessary

7

> expense and difficulty in retrieving its aircraft once it was obvious that FlyGLO would not be able to reorganize.

2018 Bankr. LEXIS 1133 at *6. Because the principal's intentional lack of cooperation with the lessor in obtaining its aircraft caused significant difficulty for the lessor in obtaining possession of, and re-leasing, its aircraft, the court held the debtor's principal in contempt, and imposed a sanction in the amount of "the loss of rental income that [the lessor] suffered because it was not able to immediately take possession of its planes. *Id.* at *1. *See also, Am. Airlines, Inc.,* 228 F.3d at 585 (affirming contempt sanction for movant's lost revenue resulting from defendants' contemptuous conduct.)

20. As set forth in the Brown Declaration, the aggregate daily rental rate for all of the Retained Vehicles is between $15,065 and $26,000. An average aggregate daily rental charge of $20,000 is an appropriate sanction to compensate MAL for the Debtors' and Mr. Zaidi's continued intentional violation of this Court's Sequester Order.

21. MAL submits that another order by this Court that simply directs the Debtors and Mr. Zaidi to comply with the Court's previous Sequester Order will be insufficient to compel the Debtors' and Mr. Zaidi' compliance with that Order, without some sanction attached to that order. This Court has previously ordered the Debtors (i) to provide proof of insurance by December 23, 2022, (ii) to pay all post-petition tolls on a timely basis and to provide proof of that timely payment, (iii) to provide written confirmation of a term sheet for the purchase of 37 of the Vehicles by January 31, 2023, and (iv) to provide by January 31, 2023, contact information for the purchaser or lender that the Debtor is negotiating with for the purchase of MAL's Vehicles. The Debtors failed to comply with those orders, and MAL had to file certificates of breach and incur attorney's fees to compel compliance with those orders. Mr. Zaidi knows full well that he did not pay MAL $2.775,000 on February 15. And he knows full well that the Sequester Order requires that the

Debtors immediately return the Retained Vehicles to MAL if that payment wasn't made. This Court must compel compliance with its orders and sanction this contumacious behavior.

22. MAL suggests an appropriate sanction that would compensate MAL for its damage suffered by the Debtors' behavior would include: (i) the payment of all attorney's fees incurred by MAL in connection with the Motion to Sequester, the Sequester Order and this Motion to Show Cause; (ii) the payment of all costs and expenses incurred by MAL in obtaining on its own the Retained Vehicles that the Debtors have failed to return to MAL pursuant to the Sequester Order; and (iii) a daily penalty equal to the daily rental that MAL is being deprived of by the Debtors' refusal to return the Retained Vehicles to MAL.

## CONCLUSION

19. Therefore, MAL respectfully requests that this Court enter an Order holding the Debtors and Farrouhk Zaidi in contempt of this Court's Sequester Order, and ordering the Debtors and Mr. Zaidi to: (i) immediately return the Vehicles to the locations previously designated by MAL, (ii) pay all attorney's fees incurred by MAL in connection with the Motion to Sequester, the Sequester Order and this Motion to Show Cause; (iii) pay all costs and expenses incurred by MAL in obtaining on its own the Retained Vehicles that the Debtors have failed to return to MAL pursuant to the Sequester Order; (iv) pay a daily penalty of $20,000 to MAL from February 15, 2023 until MAL obtains possession of all Retained Vehicles; and (v) pay all other sanctions as deemed appropriate by the Court.

Respectfully submitted,

  /s/Patrick M. Lynch_____
Patrick M. Lynch
QUILLING SELANDER LOWNDS,
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 880-1864
Plynch@QSLWM.com

Robert G. Sanker
KEATING MUETHING & KLEKAMP PLL
One East 4th Street, Suite 1400
Cincinnati, OH 45202
(513) 579-6587
Rsanker@kmklaw.com

Attorneys for Mike Albert, Ltd.

**CERTIFICATE OF SERVICE**

     A true and correct copy of the above and foregoing was served upon the parties listed below by First Class Mail, postage prepaid, or by electronic filing notification, on February 21, 2023.

U.S. Trustee
1100 Commerce Street, Room 976
Dallas, TX 75202

Emily S. Chou, Esq.
Lynda L. Lankford, Esq.
Jeff P. Prostok, Esq
Dylan Tanner Franklin Ross, Esq.
Forshey Prostok LLP
777 Main Street Suite 1550
Fort Worth, TX 76102

NGV Global Group, Inc.
10733 Spangler Road
Dallas, TX 75222

Attached Service List

          /s/ Patrick M. Lynch
Patrick M. Lynch