Patrick M. Lynch, Esq.
State Bar Number 24065655
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX 75201
(214) 871-2100 (telephone)
(214) 871-2111 (telefax)
Email: plynch@qslwm.com

Attorneys for Mike Albert Ltd.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 CASES |
| | ) | |
| NGV GLOBAL GROUP, INC. | ) | CASE NO. 22-42780-MXM-11 |
| | ) | |
| NATURAL GAS VEHICLES TEXAS, INC. | ) | CASE NO. 22-42781-MXM-11 |
| | ) | |
| NATURAL GAS SUPPLY, LLC | ) | CASE NO. 22-42782-MXM-11 |
| | ) | |
| NATURAL GAS LOGISTICS, INC., | ) | CASE NO. 22-42783-MXM-11 |
| | ) | |
| DEBTORS. | ) | |

## MIKE ALBERT LTD.'S RENEWED MOTION TO HOLD DEBTORS AND FARROUKH ZAIDI IN CONTEMPT

Mike Albert, Ltd. ("MAL") hereby moves, pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rules 2020 and 2014, for an order holding the Debtors, and their principal, Farroukh Zaidi, in contempt for their intentional and continuing violation of the Court's January 27, 2023 Agreed Order Granting Mike Albert Ltd. Motion for Order Sequestering Vehicles and Motion for Relief From Stay [Doc. 151] and [Doc. 152] ("Sequester Order") and this Court's

1

February 27, 2023 Order Denying Mike Albert Ltd.'s Motion to Hold Debtors and Farrouhk Zaidi in Contempt [Doc. 188]("Order Denying Contempt Motion").

The Debtors and their principal, Farrouhk Zaidi, continue to ignore the Sequester Order, and now they even refuse to comply with the Court's Order that denied MAL's first motion to hold them in contempt for doing so. It is now apparent that the Debtors and Mr. Zaidi will not comply with direct orders of the Court unless compelled to do so, and MAL is entitled to be compensated for the increasing expenses and losses that it is incurring because of the Debtors' and Mr. Zaidi's conduct.

## INTRODUCTION AND RELEVANT FACTS

1. MAL briefly summarizes below the series of orders that the Court has entered which the Debtors and Mr. Zaidi have violated.

2. When the Debtors' filed their bankruptcy petitions on November 17, 2022, they had not made the required lease payments under the MAL Lease (of approximately $1,000,000 per month) since January of 2022. MAL filed a Motion for Relief from Stay to recover its vehicles subject to the leases between MAL and one or more of the Debtors (the "Vehicles") on November 22, 2022 (the "Stay Motion") [Doc. 20]. On December 27, 2022, this Court signed and entered an Agreed Order [Doc. 90] ("December Order") that granted the Stay Motion as to all of the Vehicles except for 100 Vehicles[1] that the Debtors were permitted to retain (the "Retained Vehicles") subject to the terms and conditions set forth in that December Order.

3. The Debtors immediately and repeatedly failed to comply with the provisions of the December Order. For example, the Debtors failed to provide the required proof of appropriate insurance by December 23, 2022, despite multiple communications and follow up by MAL. Then,

---

[1] Pursuant to the December Order the Debtors were to identify 100 Retained Vehicles, but they actually retained 101 Vehicles.

2

on January 9, 2023, MAL became aware that the Debtors had failed to timely pay post-petition tolls incurred during the operation of the Vehicles.

4. On January 10, 2023 counsel for MAL filed a Certificate of Breach of Agreed Order and Notice of Termination of the Automatic Stay. [Doc. 102]. Pursuant to paragraph 9 of the Agreed Order, upon the filing of that certificate, the automatic stay was deemed vacated without further order of the Court.

5. Nonetheless, the Debtors continued to use the vehicles that were subject to the Agreed Order (the "Vehicles") despite the fact that those Vehicles were not properly insured. MAL filed a motion for an order directing the Debtors to cease operating the Vehicles and sequestering the Vehicles ("Motion to Sequester") to prevent further prejudice to MAL's interests on January 18, 2023 [Doc. 121].

6. MAL's Motion to Sequester was scheduled for hearing on January 26, 2023. The day before that hearing, the parties reached an agreement, set forth in the Sequester Order, that provided assurance to MAL that 37 of the Retained Vehicles would be purchased by February 15, and the balance would be purchased by February 28, 2023, or the Debtors would return the Vehicles to MAL. Specifically, the Sequester Order ordered, *inter alia*, that:

> (2) By January 31, 2023, Debtors shall provide to MAL (a) written confirmation of a commitment of a third party to purchase or to finance the purchase of 37 of the "Retained Vehicles" (the "37 Vehicles") and (b) contact information so that MAL can speak directly to that third party for confirmation.
>
> (3) By February 15, 2023, Debtors shall pay or cause to be paid to MAL by wire transfer $2,775,000 for the 37 Vehicles.

7. The court further ordered in paragraph 7 that "In the event that: (a) Debtors shall fail to make the payments required by paragraphs 3 and 5 of this Order on the dates specifically provided in those paragraphs, and (b) counsel for MAL files with the Court a certification that such breach has occurred, then without further order of the Court the automatic stay shall be

3

deemed vacated as to all the Retained Vehicles, and ***Debtors shall immediately return all Retained Vehicles*** to a location in the Dallas/Ft. Worth area designated in writing via email to counsel for Debtors." (emphasis added).

8. Debtors failed to provide a written commitment for purchase or refinance by January 31, and even failed to provide the required third party contact information. When MAL still had not received either the written confirmation or contact information by February 7, MAL served notice that the Debtors had breached the Sequester Order.

9. More important than the failure to provide information relating to the promised financing, Debtors failed to pay MAL $2,775,000, as specified in paragraph 3, by February 15, 2023. Therefore, on February 16, 2023, pursuant to the terms of the Sequester Order, ¶ 7, MAL filed with the Court a certification that such breach occurred [Doc. 167]. Upon this Certificate being filed, the Sequester Order provides that the automatic stay was deemed vacated, and Debtors were to "immediately return all Retained Vehicles to a location in the Dallas/Ft. Worth area designated in writing via email to counsel for Debtors."

10. Counsel for MAL sent an email to counsel for Debtors on February 16, 2023 demanding return of the Vehicles to designated locations. Debtors refused to return the Retained Vehicles, and MAL, in turn filed its Motion to Hold Debtors and Farrouhk Zaidi in Contempt [Doc. 175].

11. At the February 26, 2023 hearing on the Contempt Motion, the Court concluded (and the Debtors conceded) that the Debtors had breached the Order by not paying MAL $2,775,000 on February 15, 2023, but that the Debtors were not required to return the Retained Vehicles until February 28, 2023. Based upon that finding, the Court denied MAL's Contempt Motion without prejudice, but in its Order denying that Motion, ordered as follows:

3) ....The Debtors shall provide to MAL by 5:00 p.m. CT on February 28, 2023, proof that all Vehicles are insured as required by prior order of the Court, and that the insurance policies on any Retained Vehicles includes MAL as loss payee...

4) If the Debtors fail to provide proof that MAL is named as the loss payee on the insurance policies for the Subleased Vehicles to MAL by 5:00 p.m. CT on February 28, 2023, then without further order of the Court, the automatic stay shall be deemed vacated as to all Vehicles, **and Debtors shall immediately return all Vehicles to a location in the Dallas/Ft. Worth area designated in writing via email to counsel for the Debtors**.

....

7) Nothing in this Order shall be deemed to amend or supersede any provisions of the [December Order] or the [Sequester Order].

Order Denying Contempt Motion at ¶¶ 3, 4 and 7.

12. After the February 26, 2023 hearing, MAL entered into good faith negotiations with the Debtors regarding Mr. Zaidi's desire to purchase a reduced number of the Retained Vehicles from MAL. Those negotiations did not result in an agreement.

13. Debtors did not provide to MAL proof that the insurance policies covering the Subleased Vehicles include MAL as a loss payee. More importantly, however, the Debtors did not purchase, refinance or return the Retained Vehicles by February 28. On March 1, 2023, MAL filed another Certificate of Breach of this Court's Sequester Order, and counsel for MAL emailed counsel for the Debtors demanding that all Vehicles be immediately returned. A copy of that email is attached as Exhibit A.

14. The Debtors did not comply with that demand, and subsequently the Debtors failed to pay to MAL the $25,000 payment that was due on March 3, 2023, under the terms of the December Order.[2]

---

[2] Paragraph 2 of the December Order provides: "Debtors shall pay to [MAL] $25,000 per week, in advance, commencing on December 23, 2002, and continuing until it returns to MAL all of the Leased Vehicles, including the Retained Vehicles." (emphasis supplied). Paragraph 9 of the Sequester Order specifically provided that the provisions of the December Order remain in effect. And the Order Denying MAL's initial Motion for Contempt also provided that it "shall not be deemed to amend or supersede any provision of [the December Order]".

5

15. Despite the Court's clear directives to the Debtors to return the Vehicles to MAL, as of today's date, the Debtors under the control and direction of Mr. Zaidi continue to use MAL's Vehicles to MAL's prejudice.

16. As fully set forth in the attached Supplemental Declaration of Brian L. Brown ("Brown Declaration"), the Debtors have not returned a total of 86 Vehicles to MAL. Those 86 unreturned Vehicles can be categorized as follows:

    a. 50 of the unreturned Vehicles are Vehicles that Farrouhk Zaidi proposed that MAL sell to a non-debtor entity controlled by Mr. Zaidi. The Debtors have not returned any of these Vehicles and, upon information and belief, continue to operate a number of those Vehicles.

    b. 6 of the unreturned Vehicles are Vehicles that were not included in the Debtors' list of 100 Retained Vehicles, and should have been returned to MAL pursuant to the Court's December 27, 2022 Agreed Order Conditioning Stay and Setting Final Hearing on Mike Albert, Ltd. Motion for Relief from Stay [Doc. 90], but the Debtors still have failed or refused to deliver them to MAL.

    c. 6 of the unreturned Vehicles the Debtors allegedly cannot locate. Despite multiple discussions with the Debtors, the Debtors are unable or unwilling to provide MAL with the whereabouts of these Vehicles.

    d. 1 unreturned Vehicle is being held at a repair shop in Austin, Texas. The shop alleges that one or more of the Debtors owes a $15,000 repair bill, and refuses to allow MAL to take possession of the Vehicle until the Debtors pay that bill.

    e. The remaining 23 unreturned Vehicles are Vehicles that were required to be returned by February 28, 2023, and the Debtors have represented that they will be returned, but they have not yet been returned to the locations designated by MAL.

17. Included in the above-referenced 86 unreturned Vehicles are the Subleased Vehicles, which the Debtors subleased to third parties in violation of the MAL Leases. Based upon information provided by the Debtors, MAL believes that the Debtors subleased 17 Vehicles. Only <u>one</u> has been returned. Two of the Subleased Vehicles are in different states-- one in Ohio and one in Nevada. These Subleased Vehicles will be particularly difficult to recover. That is why MAL insisted, and the Debtors <u>agreed</u>, that the Sequester Order provided

6

that if the Debtors breached the Sequester Order and did not refinance or purchase the Retained Vehicles, then "**<u>Debtors shall immediately return</u>** all Retained Vehicles to a location in the Dallas/ Ft. Worth area designated in writing via email to counsel for Debtors."

18. The Debtors have now admitted to MAL in writing that they have no intention of complying with the Sequester Order with respect to the Subleased Vehicles. By an email dated March 6, 2023 (a copy of which is attached as an Exhibit to the Brown Declaration), Dmitri Tisnoi, the person responsible for coordinating the return of Vehicles to MAL, revealed that the Debtor believes that it is MAL's responsibility to recover the Subleased Vehicles that the Debtors wrongfully put in the hands of third party lessees. In that email, he states that MAL and the Debtors need to "figure out the best way for <u>your company</u> [MAL] to recover or remarket [the Subleased Vehicles] <u>should the need arise</u>." (emphasis supplied)

19. To make matters worse, MAL believes that the 16 unreturned Subleased Vehicles are not properly insured in compliance with its Leases. In the Court's Order denying MAL's initial Motion for Contempt, the Court ordered the Debtors to provide by 5:00 p.m. CT on February 28, 2023 proof that MAL is a named insured on the insurance policies covering those Subleased Vehicles. The Debtors, of course, failed to do so. This is undoubtedly because none of the sublessees have named MAL as a loss payee on the insurance policies covering the Subleased Vehicles.

**STANDARD OF REVIEW FOR CIVIL CONTEMPT**

20. "The power to impose sanctions for contempt of an order is an inherent and well-settled power of all federal courts—including bankruptcy courts." *In re Highland Capital Mgt., L.P.*, Bankr.N.D.Tex. No. 19-34054-sgj11, 2021 Bankr. LEXIS 2074, at *29 (Aug. 3, 2021) (affirmed in part and reversed in part on other grounds by *Charitable DAF Fund LP v. Highland*

7

*Capital Mgmt. LP,* Civil Action No. 3:21-cv-01974-X, 2022 U.S. Dist. LEXIS 175778 (N.D. Tex. Sep. 28, 2022)); *Schermerhorn v. Centurytel, Inc. (In re Skyport Glob. Communs., Inc.),* Nos. 08-36737-H4-11, 10-03150, 10-03225, 10-03150), 2013 Bankr. LEXIS 3218, at *6 (Bankr. S.D. Tex. Aug. 7, 2013), aff'd., 661 Fed. Appx. 835 (5th Cir. 2016); *see also In re Bradley,* 588 F.3d 254, 255 (5th Cir. 2009) (noting that "civil contempt remains a creature of inherent power[,]" to "prevent insults, oppression, and experimentation with disobedience of the law[,]" and it is "widely recognized" that contempt power extends to bankruptcy) (quoting 11 U.S.C. § 105(a), which states, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). *Garrett v. Coventry II DDR/Trademark Montgomery Farm, L.P. (In re White-Robinson),* 777 F.3d 792, 795 (5th Cir. 2015) ("A bankruptcy court may issue civil contempt orders.")

21. A bankruptcy court's power to sanction those who "flout [its] authority is both necessary and integral" to the court's performance of its duties." *In re Highland Capital Mgt.,* 2021 Bankr. LEXIS 2074, at *29 (internal citations omitted); *SkyPort Global,* 2013 Bankr. LEXIS 3218, at *6. "Indeed, without such power, the court would be a 'mere board[ ] of arbitration, whose judgments and decrees would be only advisory.'" *Id.* (internal quotations omitted).

22. "A party commits contempt when [they] violate[] a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order." *In re Highland Capital Mgt.,* 2021 Bankr. LEXIS 2074, at *31 (internal quotations omitted). To succeed in this civil contempt motion, MAL must only show by clear and convincing evidence: "(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *Id.*

23. Here, the Debtors violated a "definite and specific order of the court requiring [them] to perform a particular act ... with knowledge of the court's order."

24. Specifically, the Sequester Order required that "[b]y February 15, 2023, Debtors shall pay or cause to be paid to MAL by wire transfer $2,775,000 for the 37 Vehicles," and "shall pay or cause to be paid to MAL by wire transfer the agreed upon market values for the [remaining] 63 [Retained]" and that if Debtors failed to do so "***Debtors shall immediately return all Retained Vehicles*** to a location in the Dallas/Ft. Worth area designated in writing via email to counsel for Debtors." Debtors clearly knew of the Order to Sequester, as they agreed to it. The Debtors violated the Order to Sequester by failing to pay MAL $2,775,000 by February 15, by failing to pay an agreed amount to MAL by February 28, and by failing to immediately return the Retained Vehicles upon this default.

25. In finding that Debtors violated the Order to Sequester, the Court can "order what is necessary to: (1) compel or coerce obedience of an order; and (2) to compensate [] for losses resulting from non-compliance with a court order." *In re Highland Capital Mgt.,* 2021 Bankr. LEXIS 2074, at *37. In addition, "the Fifth Circuit has affirmed sanctions that 'reimburse [the opposing litigant] for its reasonable attorney fees related to the hearing on the motion for contempt. In awarding compensatory civil sanctions, bankruptcy courts do not err in awarding a sanction that 'restores the . . . parties to where they were before they incurred attorneys' fees in an attempt to ensure compliance.'" *Charitable DAF Fund LP v. Highland Capital Mgmt. LP,* Civil Action No. 3:21-cv-01974-X, 2022 U.S. Dist. LEXIS 175778, at *16 (N.D. Tex. Sep. 28, 2022) (*citing Ravago Ams. L.L.C. v. Vinmar Int'l,* 832 F. App'x 249 (5th Cir. 2020); *accord Skyport Global,* 661 F. App'x at 841 ("Almost without exception it is within the discretion of the trial court

to include, as an element of damages assessed against the defendant found guilty of civil contempt, the attorneys' fees incurred in the investigation and prosecution of the contempt proceedings.").

26. The Court may also order that Debtors pay a daily penalty until the Order to Sequester is complied with to "coerce compliance." *See Garrett,* 777 F.3d at 798.

27. Moreover, the U.S. Supreme Court, in *Wilson v. United States*, established the principle that an individual principal of the offending corporation can be held responsible for the corporation's contempt:

> A command to a corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, appraised of the writ directed to the corporation, prevent compliance, or fail to take appropriate action within their power for the performance of the corporate duty they, no less than the corporation itself, are guilty of disobedience and may be punished for contempt.

221 U.S. 361, 376, 31 S. Ct. 538, 543 (1911). This "responsible person" rule is well-recognized in the Fifth Circuit. *See Am. Airlines, Inc. v. Allied Pilots Assn.,* 228 F.3d 574, 581 (5th Cir. 2000) (holding officers of union subject to contempt charges for failure to cause union to comply with court order); *see also, In re Continuum Care Services, Inc.*, 375 B.R. 692 (Bankr. S.D. Fla. 2007) (ordering apprehension of former officer of the debtor in contempt of court for failure to comply with Rule 2004 order).

28. The Bankruptcy Court in the E.D. Louisiana was faced with a situation similar to ours in *In re FlyGLO, Inc.,* No. 17-11015, 2018 Bankr. LEXIS 1133 (Bankr. E.D. La. Apr. 12, 2018). In *FlyGLO*, the lessor of airplanes to the debtor filed a motion for relief from stay, which was resolved by an agreed order that allowed the debtor to continue to use the planes and "required FlyGLO to perform certain obligations with respect to the aircraft." *Id.* at *3. The debtor subsequently rejected the lease and ceased operations, but refused to take the necessary steps to cause the aircraft to be returned to the lessor. The lessor sought contempt sanctions against the

debtor and the debtor's principal (Mr. Fayard). The Court agreed, and held the principal in contempt, stating:

> [T]he court notes the difference between FlyGLO's inability to fulfill the terms of the consent order due to its failure to successfully reorganize (i.e., to make payments on amounts due to various entities and to fund maintenance and repairs required by the consent agreement), and FlyGLO's (acting through Fayard) failure to act reasonably to prevent [the lessor,] Alandia from incurring unnecessary expense and difficulty in retrieving its aircraft once it was obvious that FlyGLO would not be able to reorganize.

2018 Bankr. LEXIS 1133 at *6. Because the principal's intentional lack of cooperation with the lessor in obtaining its aircraft caused significant difficulty for the lessor in obtaining possession of, and re-leasing, its aircraft, the court held the debtor's principal in contempt, and imposed a sanction in the amount of "the loss of rental income that [the lessor] suffered because it was not able to immediately take possession of its planes. *Id.* at *1. *See also, Am. Airlines, Inc.*, 228 F.3d at 585 (affirming contempt sanction for movant's lost revenue resulting from defendants' contemptuous conduct.)

29. The Brown Declaration sets forth a fair daily rental for the Vehicles that the Debtors continue to use in violation of the Court's Orders: $133 per day for all Class 8 Vehicles, $153 per day for Class 6 Vehicles and all other Vehicles that Debtors have not returned to MAL.

30. As the Court has now seen for itself, another order by this Court that simply directs the Debtors and Mr. Zaidi to comply with the Court's previous Sequester Order will be insufficient to compel the Debtors' and Mr. Zaidi' compliance with that Order, without some sanction attached to that order. This Court has previously ordered the Debtors (i) to provide proof of insurance by December 23, 2022, (ii) to pay all post-petition tolls on a timely basis and to provide proof of that timely payment, (iii) to provide written confirmation of a term sheet for the purchase of 37 of the Vehicles by January 31, 2023, (iv) to provide by January 31, 2023, contact information for the purchaser or lender that the Debtor is negotiating with for the purchase of MAL's Vehicles, and

(v) to provide proof that MAL is a named loss payee on the insurance policies covering the Subleased Vehicles. The Debtors failed to comply with those orders, and MAL had to file certificates of breach and incur attorney's fees to compel compliance with those orders. Mr. Zaidi knows full well that he did not pay MAL $2.775,000 on February 15 and an agreed market value price for the remaining Retained Vehicles on February 28. And he knows full well that the Sequester Order requires that the Debtors immediately return the Retained Vehicles to MAL if that payment wasn't made. This Court must compel compliance with its orders and sanction this contumacious behavior.

31. MAL suggests an appropriate sanction that would compensate MAL for its damage suffered by the Debtors' behavior would include: (i) the payment of all attorney's fees incurred by MAL in connection with the Motion to Sequester, the Sequester Order and this Motion for Contempt; (ii) the payment of all costs and expenses incurred by MAL in obtaining on its own the Vehicles that the Debtors have failed to return to MAL pursuant to the Sequester Order; and (iii) the payment of an amount equal to the daily rental that MAL is being deprived of by the Debtors' refusal to return the Retained Vehicles to MAL, until all Vehicles are returned to MAL.

## CONCLUSION

MAL respectfully requests that this Court enter an Order holding the Debtors and Farrouhk Zaidi in contempt of this Court's Sequester Order, and ordering the Debtors and Mr. Zaidi to: (i) immediately return the Vehicles to the locations previously designated by MAL, (ii) pay to MAL all attorney's fees incurred by MAL in connection with the Motion to Sequester, the Sequester Order and this Motion to Show Cause; (iii) pay to MAL all costs and expenses incurred by MAL in obtaining on its own the Retained Vehicles that the Debtors have failed to return to MAL pursuant to the Sequester Order; (iv) pay to MAL daily rental for all Vehicles from March 1, 2023 until MAL recovers possession of them as follows: $133 per day for all Class 8 Vehicles, $153 per

day for Class 6 Vehicles and all other Vehicles that Debtors have not returned to MAL; and (v) pay all other sanctions as deemed appropriate by the Court.

Respectfully submitted,

/s/Patrick M. Lynch
Patrick M. Lynch
QUILLING SELANDER LOWNDS,
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 880-1864
Plynch@QSLWM.com

Robert G. Sanker
KEATING MUETHING & KLEKAMP PLL
One East 4th Street, Suite 1400
Cincinnati, OH 45202
(513) 579-6587
Rsanker@kmklaw.com

Attorneys for Mike Albert, Ltd.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served upon the parties listed below by First Class Mail, postage prepaid, or by electronic filing notification, on March 8, 2023.

U.S. Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242

Jeff P. Prostok, Esq.
Forshey Prostok LLP
777 Main Street Suite 1550
Fort Worth, TX 76102

NGV Global Group, Inc.
10733 Spangler Road
Dallas, TX 75222

Attached Service List

                                        /s/ Patrick M. Lynch
                                        Patrick M. Lynch

12380753.10