Jeff P. Prostok
State Bar No. 16352500
Emily S. Chou
State Bar No. 24006997
Dylan T.F. Ross
State Bar No. 24104435
FORSHEY & PROSTOK, L.L.P.
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Phone: (817) 877-8855
Fax: (817) 877-4151
jprostok@forsheyprostok.com
echou@forsheyprostok.com
dross@forsheyprostok.com

ATTORNEYS FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| NGV GLOBAL GROUP, INC., *et al.*,[1] | § | Case No. 22-42780-MXM-11 |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | **Expedited Hearing Requested** |

**DEBTORS' MOTION TO DISMISS BANKRUPTCY CASES**

NGV Global Group, Inc. ("NGV Global"), Natural Gas Vehicles Texas, Inc. ("NGV Texas"), Natural Gas Supply, LLC ("NGS"), and Natural Gas Logistics Inc. ("NGL", and collectively with NGV Global, NGV Texas, and NGS, the "Debtors"), as debtors and debtors-in-possession, file this *Debtors' Motion to Dismiss Bankruptcy Cases* (the "Motion") and respectfully show the following:

**JURISDICTION**

1.    The Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper before the Court

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: NGV Global Group, Inc. (9723), Natural Gas Vehicles Texas, Inc. (8676), Natural Gas Supply, LLC (4584) and Natural Gas Logistics Inc. (5403).

pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested is Section 1112(b) of the Bankruptcy Code.

## BACKGROUND

**A.    General Background**

2.    On November 17, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

3.    The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in these cases (the "Bankruptcy Cases").

4.    On November 22, 2022, the Court entered its *Order Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure Directing Joint Administration of Chapter 11 Cases* [Docket No. 28] requiring all orders, pleadings, papers, and documents to be filed in the NGV Global chapter 11 case and establishing case no. 22-42780-11-mxm as the lead case in these matters.

5.    The Debtors operate as part of a related group of global technology companies that design, manufacture, distribute and support natural gas operated medium and heavy-duty commercial vehicles sold worldwide. The companies convert vehicles to compressed natural gas engines, refurbish and service existing class 8 vehicles powered by natural gas engines and fueling systems for application in their own motor transportation business and for sale to third party companies interested in the conversion of trucks and buses to operate on natural gas. The companies are among the largest privately held natural gas logistics companies in the United States.

**B.    Debtors' Progress During the Bankruptcy Cases**

6.    The Debtors filed these Bankruptcy Cases to find some reprieve from pending litigation and creditor pressure to allow the Debtors an opportunity to reorganize and maximize recoveries for all creditors. With the breathing room provided by the automatic stay, the Debtors

believed they could recover through the downsizing of their operations, reduction of their workforce, and reorganization of their debts, and emerge from bankruptcy in a strong position to repay their debts and meet future obligations. Unfortunately, while these Bankruptcy Cases have helped the Debtors begin to downsize and resolve issues with some major creditors, after evaluating the Debtors' operational cash flow needs and cash position over the past several months, it does not appear that the Debtors will be able to put forth a viable plan of reorganization.

7. There is nothing for the Debtors to feasibly accomplish in these Bankruptcy Cases that could not be handled more efficiently and cost-effectively outside of the bankruptcy process. Virtually all of the Debtors' assets are encumbered, and in a hypothetical Chapter 7, there would be nothing to administer. Outside of bankruptcy, the Debtors expect to continue to negotiate with creditors for the payment of claims and the retention or return of collateral. The Debtors' creditors, in turn, will be free to negotiate with the Debtors or to enforce their state law remedies against the Debtors without the burdens of the automatic stay. Hence, the Debtors believe that the best course of action, both for creditors and the Debtors' future operations, is to dismiss these Bankruptcy Cases.

**C.    The Resolution of Disputes with Pre-Petition Creditors**

8. The most significant pre-petition dispute leading to the filing of these Bankruptcy Cases involved litigation and collections actions by Mike Albert, Ltd. ("MAL"). The Debtors were also facing mounting pressure from their landlords and several other secured lenders, including, but not limited to, FirstCapital Bank of Texas, N.A. ("FCB"), Ford Motor Credit Company LLC ("Ford"), Mitsubishi HC Capital America, Inc. ("MHCA") and several of the Debtors' other secured creditors (collectively, the "Secured Creditors").

9. During the Bankruptcy Cases, the Debtors have made strides in the right direction. The Debtors have returned the MAL vehicles and have reached adequate protection agreements with other creditors. Any remaining issues with pre-petition creditors, including MAL and the Secured Creditors, can best be resolved outside of these Bankruptcy Cases.

**Post-Petition Matters Involving MAL**

10. In 2019 and 2020, the Debtors entered into a series of sale-leaseback transactions with MAL pursuant to various Master Lease Agreements and related agreements (the "Leases"). Pursuant to these transactions, MAL purchased from NGV Texas over 600 vehicles and then leased those same vehicles back to NGS and NGL. The purpose of the sale-leaseback transactions was to facilitate the refurbishment, deployment, utilization, and sale of the 600+ vehicles to build and expand the NGV Global companies' logistic business using cost effective CNG fuel as a competitive advantage.

11. Shortly after the sale-leaseback transactions, the COVID pandemic brought the world economy to a halt and delayed the Debtors' plan to deploy vehicles and build their logistics business. As of the Petition Date, approximately 170 vehicles out of the 600 vehicles subject to the Leases with MAL were being used in the Debtors' logistics business and were revenue producing. As a result of the COVID pandemic delaying the Debtors ability to launch and develop their logistic and other businesses, the Debtors have not been able to generate sufficient revenue to meet their payment obligations under the Leases. MAL commenced litigation against the Debtors seeking to recover amounts due under the Leases or to repossess the vehicles.

12. During the pendency of these Bankruptcy Cases, the Debtors have worked with MAL to return, sell, or purchase all of the 600+ vehicles (the "MAL Vehicles"). In this regard, the Debtors entered into agreed orders with MAL which proved to be burdensome to the Debtors, resulting in defaults under the agreed orders. As a result, the Court found that MAL is entitled to compensation in the form of sanctions against the Debtors. The exact amount of MAL's contempt claim has not yet been determined, but such claim may be pursued or resolved by MAL just as effectively outside of these Bankruptcy Cases.

**Post-Petition Matters Involving the Landlords**

13. During these Bankruptcy Cases the Debtors have negotiated extensively with their DFW based landlords, OSI 10801 Spangler Rd, LLC ("OSI 10801"), OSI 10737 Spangler Rd, LLC

("OSI 10737"), and OSI 2001 Manana Dr, LLC ("OSI 2001", and collectively with OSI 10801 and OSI 10737, the "OSI Landlords").

14. On February 22, 2023, the Court entered its order rejecting the Debtors' real property lease with OSI 10801 effective as of January 31, 2023.

15. The Debtors have two (2) remaining leases with the OSI Landlords at 10737 Spangler Rd. and 2001 Manana Dr. (the "Remaining OSI Properties"). The Debtors do not have the current means to pay the cure costs associated with the Remaining OSI Properties, and thus do not intend to seek to assume such leases.

16. The Debtors intend to continue to work with the OSI Landlords outside of these Bankruptcy Cases regarding the Remaining OSI Properties. Indeed, the Debtors have informed the OSI Landlords that they intend to file this Motion and have made a proposal to remain on the Remaining OSI Properties for a short period while the Debtors seek to relocate. If the OSI Landlords are unsatisfied with the Debtors' performance outside of these Bankruptcy Cases, they may pursue all available remedies without first having to go through this Court.

17. During these Bankruptcy Cases, the Debtors have also worked with their Houston landlord to find a replacement tenant or sublessee. Unfortunately, as of the date of this Motion, the Debtors have been unable to locate a suitable sublessee. The Debtors expect to continue to work toward a resolution with their Houston landlord after these cases are dismissed. The Debtors have informed the Houston landlord that they intend to file this Motion and to vacate the Houston property before the end of May.

18. The dismissal of these Bankruptcy Cases is expected to streamline the Debtors' abilities to negotiate with their Landlords, as well as the Landlords' abilities to exercise their rights under their respective leases and state law.

**Post-Petition Matters Involving Secured Creditors**

19. The Debtors have worked diligently with their Secured Creditors throughout these Bankruptcy Cases.

20. The Debtors are obligated to FCB on multiple loans as described generally in *Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection* [Docket Nos. 5 and 6] (the "FCB Indebtedness"), which notes are secured by various assets of the Debtors ("Lender's Pre-Petition Collateral"), including as applicable, the Debtors' cash and cash equivalents ("Cash Collateral").

21. The Debtors and FCB have worked closely together during these Bankruptcy Cases on the use of Cash Collateral and adequate protection payments.[2] FCB holds a blanket lien on the Lender's Pre-Petition Collateral, essentially encumbering all personal property not otherwise pledged to other secured creditors. After dismissal of these Bankruptcy Cases, the Debtors hope to continue to work with FCB to resolve the FCB Indebtedness, and FCB will be free to exercise all of its rights and remedies under its loan documents and state law.

22. The Debtors have entered into adequate protection orders with both Ford and MHCA.[3] Without the automatic stay, the Debtors and Ford/MHCA are free to continue to operate under these arrangements or Ford/MHCA may enforce their rights to recover their collateral.

23. Additionally, the Debtors have worked with their insurance companies to continue or renew insurance policies post-petition.[4] The Debtors have fallen behind on premium payments with one of its providers which recently asserted an administrative claim in these Bankruptcy Cases. However, outside of the bankruptcy process, the provider will be free to negotiate with

---

[2] *See Final Order Granting Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection* [Docket No. 105], *Stipulation of Debtors and FirstCapital Bank of Texas, N.A. Regarding Final Order Granting Debtors' Emergency Motion for Entry of Interim And Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection* [Docket No. 226], and *Agreed Order Pursuant to Federal Rule Of Bankruptcy Procedure 4001(d) Providing Adequate Protection To FirstCapital Bank of Texas, N.A.*[Docket No. 258].

[3] *See Agreed Order Regarding the Automatic Stay* [Docket No. 237] & *Agreed Order Granting Mitsubishi HC Capital America, Inc.'s Motion for Relief from the Automatic Stay Pursuant to 11 USC 362(d)(1) and for Waiver of Fourteen (14) Day Stay Imposed by Bankruptcy Rule 4001* [Docket No. 261].

[4] *See Order Granting Debtors' Expedited Motion for Entry of Order (I) Authorizing Debtors to Continue Pre-Petition Insurance Programs with The Hartford, (II) Authorizing Debtors to Pay Pre-Petition Premiums and Related Obligations, and (III) Granting Related Relief* [Docket No. 131], and *Order Granting Debtors' Motion for Approval of Insurance Premium Finance Agreement* [Docket No. 254].

the Debtors or exercise its contract and state law rights without first seeking relief from the automatic stay.

## RELIEF REQUESTED

24. Section 1112(b) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 *or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate* ..." 11 U.S.C. § 1112(b) (emphasis added).

25. Pursuant to section 1112(b) of the Bankruptcy Code, the Debtors request that the Court enter an order dismissing these Bankruptcy Cases.

## ARGUMENTS AND AUTHORITIES

26. It is in the best interests of the Debtors' creditors and their estates to dismiss, rather than convert, the Bankruptcy Cases. The Debtors have resolved the pre-petition dispute with MAL that led to the filing of these Bankruptcy Cases by returning the remaining MAL Vehicles. The Debtors remaining assets are encumbered by the secured claims of the Secured Lenders, including the blanket lien of FCB, who may continue to work with the Debtors or pursue state law remedies outside of bankruptcy. After dismissal, the Debtors will have the flexibility to efficiently right-size their operations and work with willing creditors to reorganize their indebtedness. Creditors will be better served in such a scenario in that they retain the right to pursue all state law remedies without the burdens and inefficiencies of a pending bankruptcy case.

27. "After the 2005 amendments, the court continues to consider cause for dismissal of a Chapter 11 case based on the totality of the circumstances in the case." *In re Starmark Clinics, LP*, 388 B.R. 729, 736 (Bankr. S.D. Tex. 2008). A court may dismiss a case for cause as defined under 11 U.S.C. § 1112(b)(4), but courts are not limited to the grounds for dismissal enumerated in section 1112(b). *In re Property Mgmt. & Inv., Inc.*, 19 B.R. 202 (Bankr. M.D. Fla. 1982). However, "once brought voluntarily by a debtor, a chapter 11 proceeding may not be dismissed upon his motion alone, but requires a 'for cause' finding by the court." *Stinson v.*

*Williamson (Matter of Williamson)*, 804 F.2d 1355, 1360 (5th Cir. 1986).

28. The Court has great breadth in determining if cause is sufficient to dismiss the Bankruptcy Cases. "The determination of whether cause has been shown or not rests in the sound discretion of the Court." *In re Economy Cab & Tool Co.*, 44 B.R. 721, 724 (Bankr. D. Minn. 1984) (citing *In Re Levinsky,* 23 B.R. 210 (Bankr.E.D.N.Y.1982); *In Re L.S. Good & Co.,* 8 B.R. 310, 3 C.B.C.2d 75 (Bankr.N.D. W.Va.1980)).

29. Here, cause exists under Section 1112(b)(4), because there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. 1112(b)(4)(A). Although the Debtors continue to operate their businesses, the growing administrative costs of these Chapter 11 cases make it unlikely the Debtors could put forth a viable plan of reorganization.

30. Similarly, after determining cause exists, the Court has wide discretion to determine if a case should be converted or dismissed. *In re Karnar Estates, Inc.*, 6 B.R. 933, 937 (Bankr. E.D.N.Y. 1980). "When there are substantial assets that may be consumed unless a trustee is put in charge, conversion rather than dismissal is in order." *In re Express Fright Lines, Inc.*, 119 B.R. 1006, 1018 (Bankr. E.D. Wis. 1990) (citing *In re Silverstein*, 94 B.R. 284, 291 (Bankr. E.D.N.Y. 1988)). In favoring dismissal over conversion, the bankruptcy court in *Efron v. Candelario* noted that it was "'unlikely that the introduction of a trustee will do anything but add an additional party to this two party dispute,' noting that the appointment of an examiner 'did little but to increase the size of the docket and administrative expenses.'" *Efron v. Candelario (In re Efron)*, 520 B.R. 396, 413 (B.A.P. 1st Cir. 2015) (quoting *In re Efron*, 2014 Bankr. LEXIS 1683 at *7 n. 19 (Bankr. D.P.R. 2014)).

31. The Debtors do not have any substantial unencumbered assets that could be administered under Chapter 7. Nearly every asset is encumbered by the Secured Creditors, predominately by FCB's blanket lien, including its lien on cash collateral. Outside of the Bankruptcy Cases, the Debtors can and intend to continue to operate and to work with their

landlords, their Secured Creditors and other willing creditors to resolve creditor claims. Conversion of these Bankruptcy Cases to chapter 7 and the appointment of a Chapter 7 trustee would only further burden these bankruptcy cases with additional administrative costs and make it less likely that creditors will receive a recovery on their claims over and above any collateral interest they may have.

32. These factors demonstrate that dismissal of the Bankruptcy Cases, rather than conversion to Chapter 7, is in the best interests of creditors.

33. It is within the discretion of the Court, based on all the facts and circumstances of the Debtors' Bankruptcy Cases, to dismiss the Bankruptcy Cases as requested in this Motion. The factors relevant to the Court's determination favor granting this Motion. Therefore, dismissal of the Bankruptcy Cases pursuant to section 1112(b) of the Bankruptcy Code is warranted.

## **PRAYER**

WHEREFORE, the Debtors request that this Court enter an order: (a) dismissing the Bankruptcy Cases under section 1112(b) of the Bankruptcy Code, and (b) granting such further and other relief as is just and proper.

Dated: April 27, 2023

Respectfully submitted,

/s/ Jeff P. Prostok
Jeff P. Prostok
State Bar No. 16352500
Emily S. Chou
State Bar No. 24006997
Dylan T.F. Ross
State Bar No. 24104435
FORSHEY & PROSTOK, L.L.P.
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Phone: (817) 877-8855
Fax: (817) 877-4151
jprostok@forsheyprostok.com
echou@forsheyprostok.com
dross@forsheyprostok.com

ATTORNEYS FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document was served upon counsel for the United States Trustee, the Debtors' secured creditors, all parties who have filed a notice of appearance herein, and on all other creditors as listed on the attached Master Service List via ECF notification on, where possible, or first class, U.S. mail, postage prepaid on April 27, 2023.

                                              /s/ Jeff P. Prostok
                                              Jeff P. Prostok

L:\JPROSTOK\Natural Gas Logistics, Inc. (NGV Global) #6321 WO\Pleadings\Motion to Dismiss (Final) 4.27.23.docx