**Mark Stromberg**
State Bar No. 19408830
**STROMBERG STOCK, PLLC**
Campbell Centre I
8350 North Central Expressway, Suite 1225
Dallas, Texas 75206
Telephone: (972) 458-5353
Facsimile: (972) 861-5339

*Attorneys for the Landlords*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| NGV GLOBAL GROUP, INC., *et al.*, | § § § § | CASE NO. 22-42780-MXM-11 (Jointly Administered) |
| Debtors. | § § | |

## RESPONSE AND OBJECTION TO DEBTORS' MOTION TO DISMISS BANKRUPTCY CASES

COME NOW OSI 10801 Spangler Rd, LLC ("**OSI 10801**"), OSI 10737 Spangler Rd, LLC ("**OSI 10737**"), and OSI 2001 Manana Dr, LLC ("**OSI 2001**"; together with 10801 and OSI 10737, collectively the "**Landlords**"), who file this Response and Objection to the Motion to Dismiss Bankruptcy Cases [Docket No. 277] in the jointly administered bankruptcy cases of **NGV GLOBAL GROUP, INC.** (the "Debtor") and in support of this Objection, the Landlords state as follows:

1. On November 17, 2022 (the "**Petition Date**"), NGV Global Group, Inc. ("**NGV Global**"),[1] Natural Gas Vehicles Texas, Inc.,[2] Natural Gas Supply, LLC,[3] and Natural Gas

---

| 1 | Case No. 22-42780. |
|---|---|
| 2 | Case No. 22-42781. |
| 3 | Case No. 22-42782. |

Logistics, Inc.[4] (collectively, the "**Debtors**") each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**").[5]

2. This Court has jurisdiction over these jointly administered bankruptcy cases (the "**Bankruptcy Cases**") under 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 365. This is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O).

3. In the more than six months that this case has been pending, the Debtors have racked up unpaid administrative expenses that likely exceed $1.0 million. The Landlords are among the administrative creditors whose claims have not been paid by Debtors during the pendency of this case; the Landlords have filed various motions with this Court seeking the payment of post-petition obligations of the Debtors for the post-petition use of their properties under unexpired nonresidential, commercial leases, including base rents, insurance and *ad valorem* taxes. Debtors have consistently *and vigorously* litigated in opposition the payment of Landlords' post-petition rent obligations (apart from Base Rents under the leases for the properties they continue to this day to use and, until recently, adamantly claimed they intended to assume). The Debtors have also objected to paying the administrative claims of other post-petition creditors (*see, e.g.,* Docket No. 293, Paragraph 7).

4. Until the filing of this motion, and as late as last month, Debtors were telling this Court and administrative creditors that, with the assistance of their insolvency counsel retained on April 5, 2022, some seven months before the inception of this case [Docket No. 70, Paragraph 7], they intended to reorganize around a smaller business footprint, and that any such plan would be a "substantial contribution plan," in which the Debtors' owner and CEO, Farroukh "Fury" Zaidi, would contribute substantial funds such that the Debtors could satisfy the requirements of 11 U.S.C. §§ 365, 1123 and 1129 (and, specifically, 1129(a)(9)(B)(ii)'s requirement of payment

---

4   Case No. 22-42783.

of administrative claims on the effective date). The Debtors are now admitting in the dismissal motion what the Landlords were warning of months ago and of what this Court expressed concern – that "the Debtors do not currently have the wherewithal to [pay their administrative expenses]" and that "the Debtors are administratively insolvent." (*See* Docket No. 293, Paragraph 7). Worse, the dismissal motion signals the abandonment – after numerous administrative expenses were incurred and went unpaid – of any prospect of *any* contribution, substantial or otherwise, from Debtors' owners.

5. Secured and administrative creditors alike have been prevented from exercising their abilities to mitigate their losses by Debtors' continued activities in bankruptcy and the associated impact of the suspension of their common law and contractual remedies via the imposition of the automatic stay under 11 U.S.C. § 362(a). These cases have had a disproportionately harsh impact on the Landlords, who also have been "held" in an involuntary business relationship with the Debtors under 11 U.S.C. § 365. However, unlike the secured creditors, administrative creditors including the Landlords do not have collateral to which to resort to pay down, or pay off, their obligations.

6. The Debtors' Statement of Financial Affairs [Docket No. 123], at Exhibits 3 and 4, reflect the payment of multiple millions of pre-petition payments from the Debtors to various parties (including many to clear insiders) that may be avoidable Chapter 5 causes of action that: (a) have not been prosecuted or, on information and belief, investigated; (b) will cease to exist if these cases are dismissed and not converted. Of these payments: (i) $1.982 million were paid directly to Mr. Zaidi categorized as "Shareholder advance/loan repayment" within the year prior to bankruptcy (including $400,000 one week before the bankruptcy was filed); (ii) $885,360 was paid to "Wing Power Systems, Inc.," believed to be a non-bankrupt Zaidi-owned affiliate of

---

[5] The Debtors recently filed a motion to dismiss their bankruptcy cases (*see* Docket No. 277).

Debtors; (iii) $155,691.15 was paid to Southwest Airlines FCU for unspecified "Payment on shareholder personal debt;" (iv) $24,996.99 was paid to Wallis State Bank for unspecified "Payment on shareholder personal debt;" (v) $22,683.28 was paid to "WABASH" for unspecified payments of a "Wing Power vendor;" (vi) $14,974.78 was paid to Neighborhood Credit Union for unspecified "Loan payment on shareholder personal debt;" (vii) and $225,300 was paid to Dallas Art Development, LLC for an unspecified "Unsecured loan repayment," including $200,000 that appears to have been paid on November 18, 2022 (a day *following* the inception of these bankruptcy cases). All totaled, if all of these payments, representing only a percentage of those disclosed in Debtors' Statement of Financial Affairs, are avoidable, they represent **$3,311,006.20** in potential recoveries that would be more than sufficient to pay administrative claims to date, but that will evaporate if dismissal were permitted.

7. These avoidance recovery claims, which exist only in the Debtors' bankruptcy cases, would cease to exist if this case were dismissed rather than converted. Additionally, the Landlords and other administrative creditors, who for now hold priority claims, would lose their priority if these cases were dismissed, and there would be no guarantee of an equitable distribution of assets among priority creditors, or even among all of the creditors.

8. The above facts and considerations, which oddly (if not unsurprisingly) go unmentioned by the Debtors in the motion to dismiss cast the Debtors' claim, as a basis for seeking dismissal, that "in a hypothetical Chapter 7, there would be nothing to administer," (*see* Motion to Dismiss at Paragraph 7) in a new, if unflattering, light.

## ARGUMENTS AND AUTHORITIES

9. Dismissal or conversion of Chapter 11 cases is governed by 11 U.S.C. § 1112. Broadly speaking, Debtors have fairly articulated the standards for dismissal (or conversion) in their motion at Paragraphs 27 and 28. However, the Landlords disagree with the Debtors'

4

conclusion that dismissal is proper, and Landlords aver that the consideration of the totality of the circumstances both: (a) militates strongly against dismissal; and (b) strongly favors conversion to a Chapter 7, which Debtors' motion seeks to rule out. Indeed, the Landlords urge that the only interested party who will benefit from a dismissal, much as he has benefited from the automatic stay, will be Mr. Zaidi.

10.  Notably, while a debtor has an absolute right under 11 U.S.C. §1112(a) to convert a Chapter 11 case to a Chapter 7 case, *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1161 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988), neither the right to stay in Chapter 11 (*id.*) nor the right to dismissal (*see, e.g., In re Kingbrook Dev. Corp.*, 261 B.R. 378, 379 (Bankr. W.D.N.Y. 2001)) are not absolute. Further, the deciding factor to determine whether a bankruptcy court should convert or dismiss a bankruptcy case is **_not_** what the movant *requests* in their motion; rather, it is whether dismissal or conversion would be in the best interests of creditors and the estate. In re Klenosky, 130 B.R. 132, 135 (E.D.N.Y. 1991), citing *In re Larmar Estates, Inc.*, 6. B.R. 933, 936-37 (Bankr. E.D.N.Y. 1980). Therefore, the mere existence of "cause" for dismissal is, by itself, insufficient to justify the dismissal of a case over the option to convert. *In re Mechanical Maintenance, Inc.*, 128 B.R. 382 (E. D. Pa. 1991); the bankruptcy court must move to a separate, analytical step to determine whether dismissal or conversion serves the best interest of creditors, and creditors need not demonstrate plain legal prejudice to avoid dismissal where there interests are better served by conversion. *Id.* at 387-88.

11.  In numerous cases, courts have held that where there are substantial assets to uncover and recover for the benefit of creditors, conversion so that a trustee may seek their recovery is warranted over dismissal. *See, e.g., Lakefront Investors, LLC v. Clarkson*, 484 B.R. 72 (D. Md. 2012), *aff'd*, 520 Fed. Appx. 221 (4th Cir. 2013); *Reagan v. Wetzel (In re Reagan)*, 403 B.R. 614 (8th Cir. B.A.P. 2009), *aff'd*, 374 Fed. Appx. 683 (8th Cir. 2010); *In re Red Door*

5

*Lounge, Inc.*, 559 B.R. 828, 736-37 (Bankr. D. Mont. 2016) (holding that the "better choice" for creditors, where there was no avenue for payment outside the bankruptcy case, was conversion); *In re Silverstein*, 94 B.R. 342 (Bankr. E.D.N.Y. 1988).

12. Bankruptcy courts may – indeed they must – take these factors (the loss of avoidance claims, the costs of the Chapter 11 proceedings to creditors, the loss of administrative priority among creditors, and the loss of any prospect of pro rata distribution of assets collected) into account when deciding between conversion and dismissal. Each and all of them weigh heavily in favor of conversion and against dismissal. The only people protected or benefited by dismissal over conversion are the insiders of Debtors, whose mismanagement lead to the bankruptcy cases, whose mismanagement in bankruptcy has lead to the administrative claims, and whose preferential or fraudulent transfers out of the Debtors before bankruptcy – which might have facilitated a reorganization or, at the very least, the payment of administrative claims, if they had remained in the Debtors – will likely never be recovered if these cases are dismissed.

13. For these reasons, the Landlords object to dismissal of these cases, and instead request that they be converted to Chapter 7 cases.

DATED this 10th day of May, 2023.

          Respectfully submitted,

          STROMBERG STOCK, PLLC
          Attorneys and Counselors

          By: ___*/s/Mark Stromberg*___
              Mark Stromberg
              State Bar No. 19408830

          8350 North Central Expressway, Suite 1225
          Dallas, TX 75206
          Telephone: 972-458-5353
          Facsimile: 972-861-5339
          mark@strombergstock.com

          ***Attorneys for Movant***

## Certificate of Service

The undersigned hereby certifies that on May 10, 2023 he caused a true and correct copy of the foregoing Motion to be served upon all parties requesting notice via CM/ECF.

                                                */s/Mark Stromberg*
                                                MARK STROMBERG