C. Jared Knight
State Bar No. 00794107
Bailey Hartman
State Bar No. 24125916
Cathy B. Miller
State Bar No. 00790317
Morgan Williamson L.L.P.
701 S. Taylor, Suite 324
Amarillo, TX  79101
(806) 358-8116 Telephone
(806) 350-7642 Fax
jknight@mw-law.com
bhartman@mw-law.com
cmiller@mw-law.com
*Attorneys for Prosperity Bank, successor by merger
to FirstCapital Bank of Texas, N.A.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| NGV GLOBAL GROUP, INC., *et al.*,[1] | § | Case No. 22-42780-MXM-11 |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |

## RESPONSE AND OBJECTION OF PROSPERITY BANK
## (SUCCESSOR BY MERGER TO FIRSTCAPITAL BANK OF TEXAS, N.A.)
## TO DEBTORS' MOTION TO DISMISS BANKRUPTCY CASES

Prosperity Bank, successor by merger to FirstCapital Bank of Texas, N.A. ("FCB") files this Response and Objection to Motion to Dismiss Bankruptcy Cases [Docket No. 277] in the jointly administered bankruptcy cases of NGV Global Group,

---

[1] The following Chapter 11 bankruptcies are being jointly administered with the above-captioned case and this instrument filed in the captioned case (Case No. 22-42780-MXM-11) is made for all applicable purposes in all of the jointly administered bankruptcies: Natural Gas Vehicles Texas, Inc. (Case No. 22-42781-MXM-11); Natural Gas Supply, LLC (Case No. 22-42782-MXM-11); and Natural Gas Logistics, Inc. (Case No. 22-42783-MXM-11).

Inc. ("Debtor"). FCB adopts and joins in arguments asserted by the Landlords, Mike Albert, and Dallas County, to the extent repeated herein. FCB, like these other secured creditors, requests conversion of this case to a proceeding under Chapter 7 of the Bankruptcy Code. FCB accordingly states in support as follows:

I.
BACKGROUND

1. On November 17, 2022 ("Petition Date"), NGV Global Group, Inc.; Natural Gas Vehicles Texas, Inc.; Natural Gas Supply, LLC; and Natural Gas Logistics Inc. ("Debtors") each filed voluntary petitions for bankruptcy relief under Chapter 11 of the Bankruptcy Code.

2. This Court has jurisdiction over these jointly administered bankruptcy cases under 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 365. This is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O).

3. FCB is the largest creditor in this bankruptcy, other than certain insiders. FCB is secured by all assets of Debtors, including inventory, accounts, equipment, money, bank accounts and deposits with secured party, general intangibles, instruments and documents, investment property, commercial tort claims, letter of credit rights, and proprietary rights. As of the Petition Date, FCB was owed in excess of $9 million. (*See* FCB Proof of Claim (Claim No. 24)).

4. Throughout the bankruptcy, Debtors have assured FCB that it is significantly oversecured. (*See* motion to use cash collateral, Docket No. 6, ¶ 24). Debtors have further agreed to use "best efforts" to sell certain collateral (approximately 328 120-gallon LNG tanks) by March 31, 2023, to pay toward their

debts to FCB. (*See* 2d interim order on cash collateral, Docket No. 75, ¶ 10, and final order on cash collateral, Docket No. 105, ¶ 13). To date, the tanks have not been sold.

5. Despite being promised under agreed order adequate protection payments of $15,000.00 per month to begin April 25, 2023, (*see* order on adequate protection, Docket No. 258), FCB has received no payment. Further, since the bankruptcy's inception, FCB has received no payments other than an insurance check for $64,000.00 on a burned collateral vehicle. (*See* final order on cash collateral, Docket No. 105, ¶ 6).

6. Debtors' schedules claim the bankruptcy estate owns assets valued in excess of $60 million.[2] Yet, secured creditors and administrative claimants have been prevented from exercising their state-law remedies to mitigate losses due to the automatic stay, 11 U.S.C. § 362(a). In addition, Debtors have effectively eliminated FCB's cash collateral. Debtors have continued to use and diminish the value of FCB's other collateral. Now, in Debtors' motion to dismiss filed on April 27, 2023, Debtor's claim to be "administratively insolvent." (*See* Docket No. 293, ¶ 7). These facts call into to question FCB's oversecured status

7. Debtors have had the use of FCB's collateral for 6 months. Dismissal at this point would be patently unfair to FCB and the other secured creditors (without a viable work-out plan outside of bankruptcy, which has not been presented). For these reasons, and others stated below, FCB opposes dismissal and requests

---

2 More specifically, Natural Gas Vehicles Texas, Inc. shows assets of $3,810,027.00 (Case No. 22-42781-MXM-11, Docket No. 28); Natural Gas Supply, LLC shows assets of $12,652.803.00 (Case No. 22-42782-MXM-11, Docket No. 27); Natural Gas Logistics, Inc. shows assets of $6,577,206.00 (Case No. 22-42783-MXM-11, Docket No. 27) and NGV Global Group, Inc. shows assets of $38,752,373.00 (Case No. 22-42780-MXM-11, Docket No. 122).

conversion to Chapter 7.

## II.
## ARGUMENTS AND AUTHORITIES

8.  Pursuant to 11 U.S.C. § 1112(b), FCB requests that the Court convert this case to a Chapter 7 on the following grounds:

> a.  The case should be converted, rather than dismissed, because conversion to a Chapter 7 would be in the best interest of creditors and the estate. 11 U.S.C. § 1112(b)(1); and
>
> b.  For cause, due to substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. 11 U.S.C § 1112(b)(4)(A).

9.  Debtors have no absolute right under 11 U.S.C. § 1112(a) to dismissal *(see, e.g., In re Kingbrook Dev. Corp.,* 261 B.R. 378, 379 (Bankr. W.D.N.Y. 2001)). The deciding factor to determine whether a bankruptcy court should convert or dismiss a bankruptcy case is *not* what the movant *requests* in their motion; rather, it is whether dismissal or conversion would be in the best interests of creditors and the estate. *In re Klenosky*, 130 B.R. 132, 135 (E.D.N.Y. 1991) (citing *In re Larmar Estates, Inc.*, 6. B.R. 933, 936-37 (Bankr. E.D.N.Y. 1980)). Therefore, the mere existence of "cause" for dismissal is, by itself, insufficient to justify the dismissal of a case over the option to convert. *In re Mechanical Maintenance, Inc.,* 128 B.R. 382 (E. D. Pa. 1991). The bankruptcy court must move to a separate, analytical step to determine whether dismissal or conversion serves the best interest of creditors, and creditors need not demonstrate plain legal prejudice to avoid dismissal where their interests are better served by conversion. *Id.* at 387-88.

### A. Conversion to Chapter 7 is in the Best Interest of Creditors and the Estate

10. Once the automatic stay has lifted, a feeding frenzy will begin. Inferior-lien creditors will file lawsuits and engage in self-help repossession to the expense and loss of first-lien creditors. First-lien creditors have already spent thousands in attorney fees to get the bankruptcy case to this point. Now, we know Debtors cannot promote a viable plan, but we do not know what a proper investigation by a Chapter 7 Trustee will reveal.

11. If, as has been promoted by Debtors, their assets are worth more than enough to pay secured creditors, then it is in the best interest of the bankruptcy estate to allow a Chapter 7 Trustee to engage in an orderly liquidation. This will allow for fair treatment of secured creditors and pro-rata distribution to unsecureds. Dismissal, on the other hand, leaves justice to numerous state-court proceedings and self-help efforts that cannot achieve the same fair distribution available in a unitary Chapter 7 proceeding.

12. In numerous cases, courts have held that where there are substantial assets to uncover and recover for the benefit of creditors, conversion so that a trustee may seek their recovery is warranted over dismissal. *See, e.g., Lakefront Investors, LLC v. Clarkson,* 484 B.R. 72 (D. Md. 2012), *aff'd,* 520 Fed. Appx. 221 (4th Cir. 2013); *Reagan v. Wetzel (In re Reagan),* 403 B.R. 614 (8th Cir. B.A.P. 2009), *aff'd,* 374 Fed. Appx. 683 (8th Cir. 2010); *In re Red Door Lounge, Inc.,* 559 B.R. 828, 736-37 (Bankr. D. Mont. 2016) (holding that the "better choice" for creditors, where there was no avenue for payment outside the bankruptcy case, was conversion); *In re Silverstein,*

94 B.R. 342 (Bankr. E.D.N.Y. 1988).

13. For these reasons, FCB objects to dismissal of these cases and instead requests they be converted to Chapter 7 cases.

DATED this 23rd day of May, 2023.

    Respectfully submitted,

    Morgan Williamson LLP

    By: /s/ C. Jared Knight
    C. Jared Knight
    State Bar No. 00794107
    Bailey Hartman
    State Bar No. 24125916
    Cathy B. Miller
    State Bar No. 00790317
    Morgan Williamson L.L.P.
    701 S. Taylor, Suite 324
    Amarillo, TX 79101
    (806) 358-8116 Telephone
    (806) 350-7642 Fax
    jknight@mw-law.com
    bhartman@mw-law.com
    cmiller@mw-law.com
    *Attorneys for Prosperity Bank, successor by merger to FirstCapital Bank of Texas, N.A*

## CERTIFICATE OF SERVICE

      The undersigned certifies that he has on the date shown below transmitted a true copy of the foregoing document to the following parties in interest by electronic notification via the Court's electronic case filing system or email on the 23rd day of May, 2023:

Jeff P. Prostok
Lynda L. Lankford
Dylan T.F. Ross
ForsheyProstok, LLP
777 Main St., Suite 1550
Fort Worth, TX 76102
*Debtor(s)' Attorney*

US Trustee
1100 Commerce Street
Room 976
Dallas, TX  75202

All parties that have requested electronic notice
pursuant to N.D. Tex. L.B.R. 2002-1(j)

_____
C. Jared Knight, State Bar No. 00794107